**UNITED STATES of America, Appellee,**

v.

**Frank SACCO and Benjamin Gentile, Appellants.**

**Nos. 1107, 1108, Dockets 76–1373 and 76–1374.**

United States Court of Appeals, Second Circuit.

Argued July 20, 1977.

Decided Oct. 5, 1977.

Frank Sacco, appellant pro se.[1]

Donald E. Nawi, New York City (Howard L. Jacobs, New York City, of counsel), for appellant Gentile.

Michael C. Eberhardt, Sp. Atty. U. S. Dept. of Justice (Robert B. Fiske, Jr., U. S.

---

1. At Sacco's request, David Blackstone, Esq., his counsel assigned on appeal, was relieved after filing an *Anders* brief. See *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Sacco thereafter proceeded *pro se* and submitted extensive memoranda for our consideration.

Atty., Audrey Strauss, Asst. U. S. Atty., Southern District of New York, New York City, of counsel), for appellee.

Before MESKILL, Circuit Judge, and NEAHER * and COFFRIN **, District Judges.

NEAHER, District Judge:

Frank Sacco and Benjamin Gentile appeal from judgments of conviction entered upon jury verdicts returned on September 26, 1972 after a nine-day trial in the Southern District of New York before the Honorable Lee P. Gagliardi, District Judge. Appellants were found guilty of one count of making an extortionate extension of $1,000 credit and, along with a co-defendant John Rhines, not a party to this appeal, of one count of conspiring to participate in the use of and five counts of using extortionate means to collect extensions of credit, in violation of 18 U.S.C. §§ 891, 892, 894 and 2.[2]

Shortly before trial, Sacco had refused to proceed with counsel assigned to try the case and elected to conduct his defense *pro se*. The attorney remained to assist Sacco in the course of the trial to prevent errors as to the law. Following denial of the co-defendants' motions for a discretionary severance on grounds of prejudice, Rule 14 F.R.Crim.P., the trial proceeded against all defendants.

Of appellants' claims of error raised on appeal, we find only the following to warrant discussion: (1) Gentile's claim that the trial of his case should have been severed from that of Sacco because of Sacco's preju-dicial remarks to the jury in the conduct of his *pro se* defense; (2) Gentile's and Sacco's claim that their convictions should have been set aside because the government's evidence was tainted by illegal wiretapping; and (3) Sacco's claim that it was error to summarily deny his taint motion because of his failure to appear at the taint hearing.

Finding no merit in any of appellants' claims, we affirm.

I.

In view of the nature of the issues raised on appeal, we summarize only briefly the facts the jury could have found beyond a reasonable doubt from the evidence adduced by the government. That evidence was more than sufficient to establish that in 1970 Sacco, aided and abetted by Gentile, engaged in a loan shark extortion of one James Sonny Robbins, the owner of an auto wrecking business, and that Gentile and Rhine, as Sacco's collectors, attempted with threats of violence, explicit and implied, to collect payments on loans made to Robbins by putting him in fear of physical harm if he failed to pay.

Robbins' problems began in May or June 1970 when Sacco and Gentile came to his junkyard in a bullet-ridden car and Sacco told Robbins "We got to get rid of this car." In connection with its disposal, Robbins accepted a $1,000 loan and was told he would have to make payments of $75 per week— which was equivalent to an annual interest rate of 260%. Robbins made the payments for a few months but then fell behind. This led to a succession of telephone calls

---

* Hon. Edward R. Neaher of the United States District Court for the Eastern District of New York, sitting by designation.

** Hon. Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

**2.** On June 9, 1976 Sacco was sentenced to concurrent terms of 20 years' imprisonment on all counts. On July 29, 1976 Gentile was sentenced to concurrent terms of 15 months on six counts and to two years' probation on the last collecting count.

The nearly four-year hiatus between conviction and sentence was occasioned to a large extent by appellants' post-trial motions to vacate their convictions on grounds that evidence used against them at trial was the result of illegal State wiretapping. Those motions were held in abeyance pending resolution of similar motions filed by Sacco in connection with two earlier federal extortion convictions in the District of Maryland and the Middle District of Florida, based on 1971 indictments. In addition, in the interim Sacco escaped from federal custody and was a fugitive when the taint hearing complained of here was scheduled to go forward.

and visits from Sacco, Gentile and Rhines demanding that Robbins continue payments on the amount owed, which was said to have increased to $9,000. On these occasions statements were made by appellants intimating that neither Robbins nor his wife or children would have any trouble "as long as you keep your payments up" but suggesting that "rough boys" would be sent if Robbins failed to do so. Robbins understandably viewed these as threats of physical harm to himself or his family if he failed to make the demanded payments.

The jury was not required to credit Sacco's attempt to show that he was merely a partner in Robbins' junkyard and that the $75 weekly payment he acknowledged receiving was his share of the profits and not interest. Suffice it to say that the jury's verdict against all defendants was amply supported by the evidence and that Sacco's contention that the element of fear on Robbins' part was not sufficiently shown is frivolous. Accordingly, we turn to the principal issues raised by appellants.

## II.

## SEVERANCE

Gentile claims that Sacco made prejudicial remarks about him to the jury while conducting his defense *pro se* which deprived Gentile of his right to a fair trial, and it was error not to grant him a separate trial. The prejudice urged is that Sacco's repeated statements to the jury about Gentile could not be counteracted by cross-examination because Sacco did not testify. *Cf. Bruton v. United States*, 391, U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

This case illustrates that a defendant's right to defend a criminal charge *pro se*, see 28 U.S.C. § 1654 and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1976), may not be an unmixed blessing in a multi-defendant case even when assisting

counsel is assigned. The trial had no sooner begun than Sacco told the jury in his opening statement that Gentile "will testify in this trial that he acted on my instructions to collect monies from Mr. Robbins which were due me . . . [and] never threatened Mr. Robbins in any manner." Gentile, however, had changed his mind about testifying after previously telling Sacco he would do so, and did not take the stand.

◼ While Sacco's statement was unfortunate, it was not such as to require a severance. Gentile's counsel made no objection when the remark was uttered and did not request a curative instruction.[3] Furthermore, in moving for a mistrial, he did not argue that the remark was inculpatory, but rather that the jury would expect Gentile to testify and would not be able to forget that when he failed to take the stand. We find no merit in those contentions. Sacco's opening statement was if anything exculpatory, not inculpatory. Prejudice was most unlikely when Judge Gagliardi in his introductory remarks had already informed the jury that what was said in opening statements was not to be considered as evidence, and later on in his final instructions made it clear that the defendants had an absolute right not to testify.

◼ Nor do we agree that Sacco's conduct of his defense was so inept or comments he made in summation so prejudicial as to deprive Gentile of a fair trial.[4] *United States v. Calabro*, 467 F.2d 973 (2 Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973); *United States v. Aviles*, 274 F.2d 179 (2 Cir.), *cert. denied*, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960). *Cf. United States v. Bubar*, 467 F.2d 192, 205 (2 Cir. 1977). Sacco's cross-examination of government witnesses and questioning of his own witness must be viewed in light of the defense of collective innocence assumed by the defend-

---

3. Although an objection to a statement made by another member of the defense may not always be wise, it remains an option of counsel, to be weighed in light of the nature of the remark and the possibility of prejudice.

4. Indeed the third co-defendant's attorney pointed out in his summation that it was not easy to try one's own case and commended Sacco for doing a "pretty superlative job."

ants. None of the matters referred to in Gentile's catalogue of Sacco's tactical errors [5] were so antagonistic or inconsistent with that defense as to prejudice his co-defendants. Compare *United States v. Johnson*, 478 F.2d 1129 (5 Cir. 1973), and *DeLuna v. United States*, 308 F.2d 140 (5 Cir. 1962), with *United States v. DiGiovanni*, 544 F.2d 642 (2 Cir. 1976), and *United States v. Barrera*, 486 F.2d 333 (2 Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1944, 40 L.Ed.2d 291 (1974).

Similarly, Sacco's comments in summation cannot be said to have prejudiced Gentile. Although there was no testimony of a conversation between the two, Sacco, in recounting Robbins' testimony of his need for $1,000 and Gentile's reply that he would talk to the boss, added "So Benny [Gentile] spoke to me." Whether Gentile and Sacco had a conversation was not a fact in dispute. The evidence was uncontradicted that after Gentile's visit, he and Sacco returned and offered Robbins the money.

Other comments of Sacco that there was no conspiracy to put fear into Robbins, that Gentile did what he was told, and that defendants did not deny meeting with Robbins and probably had many more meetings, were neither inculpatory nor inconsistent with defendants' collective view of the evidence. When the statements were made, defense counsel neither objected or requested a curative instruction, although given ample opportunity to do so by the trial judge. In addition, Judge Gagliardi reminded the jury during Sacco's summation that they were to be concerned solely with the evidence, not comments of counsel, and that their recollection of the evidence was controlling. In the circumstances, we find no substantial prejudice to Gentile by reason of Sacco's remarks.

■ Nor was there a violation of Gentile's sixth amendment right of confrontation, as he contends. For *Bruton* to apply, the statements of a nontestifying co-defendant must be " 'clearly inculpatory' as to the complaining co-defendant and [be] 'vitally important to the government's case.' " *United States v. Wingate*, 520 F.2d 309, 313 (2 Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Catalano*, 491 F.2d 268, 273 (2 Cir.), *cert denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974); *United States ex rel. Nelson v. Follette*, 430 F.2d 1055, 1058 (2 Cir. 1970), *cert. denied*, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971). That was not the case here.

■ Although the record here reveals no abuse of discretion in the denial of a severance, the problem of the *pro se* defendant which confronted the district court and counsel for co-defendants deserves comment. As more and more defendants appear *pro se*, that problem is certain to recur. Accordingly, it may be useful to note the steps taken by Judge Gagliardi to minimize the potential for prejudice to co-defendants, all of which we commend, and to suggest additional precautions which might serve to prevent a *pro se* defendant from so prejudicing a jury as to require a severance.

First, Judge Gagliardi retained the attorney assigned to try the case for Sacco to advise and assist Sacco during trial—aid which Sacco accepted. Second, the judge treated Sacco as an attorney, warning him he would be held to the rules of law and evidence,[6] and that he should refrain from speaking in the first person as though he were testifying, or voicing personal observations in his comments on the evidence.[7]

---

5. Appellant Gentile's Brief at 11–12.

6. The court explicitly advised Sacco,
"[J]ustice is going to require that I hold you substantially within the rules of law and evidence that are required to be applied. . . Your acting for your own self here is not going to defeat having a fair trial with everybody involved." (Tr. 84.)

7. Judge Gagliardi instructed Sacco as follows:

"I urge you in your summation to the jury not to use the first person in such a way that would indicate that you are now testifying before them. You have the right to comment on the evidence, any reasonable inferences that should be drawn either from the evidence that has been produced or that has not been produced, and you may comment on them that way, but you may not make them yourself in your summation." Tr. 1309.

Third, when Sacco strayed beyond bounds, the judge, either at the government's objection or *sua sponte*, cautioned the jury in appropriate terms. Finally, the court carefully instructed the jury—in its closing remarks before summation, during summations and in its final instructions that nothing the *lawyers* said was evidence in the case.

■ In addition to the foregoing measures, and to avoid any ambiguity in the jury's mind about the unsworn statements of a *pro se* defendant, it should be made clear to the jury at the outset that anything he says in his "lawyer" role is not evidence against him or a co-defendant, and his remarks are to be regarded no differently than those of the attorneys in the case. The *pro se* defendant should also be specifically instructed beforehand that in any opening statement or summation he must avoid reference to co-defendants without prior permission from the court, and should refrain from commenting upon matters not in evidence or solely within his personal knowledge or belief.

■ We suggest further that a defendant who has chosen to represent himself "should be made aware of the dangers and disadvantages of self-representation." *Faretta v. California, supra*, 422 U.S. at 835, 95 S.Ct. at 2541. Especially in multi-defendant trials, the *pro se* defendant should understand that although "he may conduct his own defense ultimately to his own detriment," *id.* at 834, 95 S.Ct. at 2541, the court will not countenance the deprivation of his co-defendants' right to a fair trial. He should know that he will be required "to comply with relevant rules of procedural and substantive law," *id*, at 834 n. 46, 95 S.Ct. at 2541, and that if he deliberately fails to obey or willfully engages in obstruc-

tionist misconduct, his self-representation may be terminated.

## III.

## TAINT

Appellants' claim that evidence at trial was the product of illegal wiretapping arises from a wiretap the Westchester County District Attorney's Office maintained on Sacco's telephone in 1969 and 1970. For purposes of appellants' taint motions, that wiretap was conceded to have been illegal. First, appellants claimed before the district court that the FBI received information from the wiretap which led to its investigation into the extortion scheme against Robbins and which formed the basis for the federal prosecution itself. Secondly, Gentile claims that other agencies, the State Liquor Authority (SLA) and the Federal Bureau of Alcohol, Tobacco and Firearms (ATF), received information from the wiretap which led to an earlier investigation of Dooley's Tavern in Westchester and thereby tainted the trial testimony of SLA and ATF agents as to their observations of appellants in the course of that investigation.[8]

After consideration of the records from the Maryland and Florida taint hearings and a further hearing before him, Judge Gagliardi found that the federal authorities had not used information from the wiretaps in the prosecution. He accepted the testimony of the FBI agent handling the Robbins' investigation that he had not used any wiretap information, did not exchange information with Westchester officials and attempted specifically to avoid any information they might have uncovered. The court further found that, although the FBI had obtained some information from SLA

---

&ast; &ast; &ast; &ast; &ast; &ast;

"But I ask you not to individualize what you might have said if you had taken the stand, Mr. Sacco.

"That's not permitted, and if you have to be interrupted during your summation either by objections of Mr. Broderick [the prosecutor] or otherwise, I will be compelled to continuously refer to that jury that you are not a

witness, that these are your own personal observations and so forth and should not be mentioned and carry no weight whatsoever with this jury." Tr. 1310.

8. The district court assumed Gentile had standing to challenge the use of information obtained from the wiretap on Sacco's telephone, and that assumption is continued here.

files, "no evidence was presented to indicate any information in S.L.A. files came from the illegal wiretaps." He also held that the government had proved an independent source of FBI information, namely other federal agents and Robbins' himself.

Although Gentile does not argue the independent source for the FBI's Robbins' investigation on this appeal, he urges that the earlier investigation by the SLA and ATF must have been tainted. The SLA and ATF agents had testified to their observations of Sacco and Gentile at Dooley's Tavern in April 1970, in order to help establish appellants' financial interest in the business at which the first loan to Robbins and subsequent payments by him were made.

On the issue of taint, although the government "has the ultimate burden of persuasion to show that its evidence is untainted," *Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176 (1969), Gentile had "the initial burden of producing specific evidence demonstrating taint in a substantial portion of the Government's case against him." *United States v. Sapere*, 531 F.2d 63, 66 (2 Cir. 1976), citing *Alderman v. United States*, *supra*, and *Nardone v. United States*, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

Gentile utterly failed to make the initial showing of taint. No evidence was presented to the district court, apart from the mere existence of the wiretaps, to overcome the absence of any wiretap information in SLA files and the ATF agents' testimony in the Florida hearing establishing an independent federal source and lack of knowledge of any wiretaps. Equally as dispositive, the ATF and SLA agents' testimony constituted a minor part of the government's case. The testimony did not even refer to the Robbins investigation, although it was that investigation which formed the heart of the government's case.[9]

Having failed to show taint in the government's case, Gentile's motion to set aside his conviction was properly denied.

Sacco's argument here is that he was never given the opportunity to be heard on his taint claim. The reason is apparent. On June 16, 1975, during the taint hearing in Florida on Sacco's earlier taint motion, he escaped from federal custody. Soon thereafter he wrote to the district judge in Maryland, with a copy to the other two courts, stating he would explain his "departure" in the "very near future," intended to "continue fighting my present litigations" and requested the courts to rule on "all of my previous motions and any future ones." He gave the name of his Maryland attorney as a return address. Sacco remained a fugitive for eight months and was not apprehended until February 27, 1976.

In November 1975 the government requested that Sacco and his co-defendants be sentenced, arguing he had waived the opportunity for post-trial hearing of his motions. The district court scheduled a final hearing on the taint motion, and gave notice to Sacco's Maryland attorney and to Gentile's attorney. Before the date set for the hearing, Sacco telephoned Gentile's attorney, inquiring about the hearing of which he had some knowledge, and was informed of the hearing date. Sacco failed to appear at the hearing. His post-trial motions were denied for his willful failure to appear, the district court finding that he had actual notice of the hearing, and knew his presence was indispensable. Sacco was apprehended before the hearing actually took place, but his application to reinstate his motions was denied.

In accord with the district court, we believe a defendant should not be permitted to abuse the process of the court in such a fashion. We think the district judge was

---

**9.** The proof at the hearing was also more than sufficient to demonstrate that the prosecution arose from sources independent of the wiretap.

correct in holding that, on a claim for post-conviction relief, as on a direct appeal, one who has escaped from custody is not entitled "to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970). Accord, *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *United States v. Sperling,* 506 F.2d 1323, 1345 n. 33 (2 Cir. 1974); *Brinlee v. United States,* 483 F.2d 925 (8 Cir. 1973); *United States v. Shelton,* 482 F.2d 848 (5 Cir. 1972); *Hitchcock v. Laird,* 456 F.2d 1064 (4 Cir. 1972); *United States v. O'Neal,* 453 F.2d 344 (10 Cir. 1972); *Johnson v. Laird,* 432 F.2d 77 (9 Cir. 1970).[10] Nor was the district judge required to reinstate the motions when Sacco was returned to federal custody and he did not abuse his discretion in refusing to do so. *United States v. Shelton,* 508 F.2d 797, 799 (5 Cir. 1975). See also *Estelle v. Dorrough, supra.*

 At Sacco's sentencing, Judge Gagliardi did "confirm" and "adopt" the findings of the Maryland taint hearing, in which Sacco's motion was denied for lack of evidence that the government used the fruits of any wiretapping in that case. That decision, coupled with the denial of Gentile's identical motion, which we uphold, effectively disposes of any claim of Sacco's here. Sacco's motions to set aside his conviction on grounds of taint were properly denied.[11]

We have carefully considered appellants' other claims of error and find them without merit. The judgments of conviction are affirmed.

---

**10.** Alternatively, under *United States v. Tortora,* 464 F.2d 1202 (2 Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), Sacco's willful failure to appear was a waiver of his right to be present and actively participate. As the initial burden of showing taint was upon him, *Alderman v. United States, supra,* and as he was representing himself, it follows that there was a total failure of proof on his part that the prosecution was tainted.

**11.** In ruling that the government had established an independent source for the prosecution, the district court also resolved Sacco's claim that the tapes from the wiretaps had been tampered with. Nor does his claim that the State authorities' failure to seal some of the tapes should result in dismissal of the indictment have any merit, when the recordings were never attempted to be used for leads in the prosecution or as evidence in Sacco's trial. See *United States v. Fury,* 554 F.2d 522 (2 Cir. 1977).