**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph OGLESBY, Defendant-Appellant.**

**No. 84–1934.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1985.

Decided June 24, 1985.

Bruce E. Peppert, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

William D. Stiehl, Jr., Stiehl & Stiehl, Belleville, Ill., for defendant-appellant.

COFFEY, Circuit Judge.

The defendant appeals his conviction for "Bank Robbery and Incidental Crimes" under 18 U.S.C. § 2113 arguing that his trial should have been severed from that of his co-defendant after his co-defendant decided to proceed *pro se*. The defendant additionally challenges the trial court's refusal to suppress his confession, its denial of his motion for judgment of acquittal, and his sentence of twenty years imprisonment. We affirm.

## I.

The testimony at the trial of Oglesby and his co-defendant, Mitchell, in the United

States District Court for the Southern District of Illinois established a bank robbery in Belleville, Illinois, and the subsequent arrest in East St. Louis, Illinois. At about noon on February 23, 1984, two men, later identified as Oglesby and Mitchell, entered the Illini Federal Savings and Loan Association of Belleville, Illinois. While Mitchell approached the bank manager indicating that he wished to apply for a loan, Oglesby slipped behind the teller's counter and pressed a loaded .38-caliber Derringer in the side of the nearest teller. Mitchell produced a .357 Magnum revolver and threatened the manager. At Oglesby's direction, the teller removed $4,302.00 from the cash drawers and placed the money in a brown paper bag. Included in the money removed from the cash drawers was bait money, bills whose serial numbers were recorded for identification purposes. The removal of the bait money from the cash drawer activated the saving and loan's surveillance cameras which took a series of pictures, including photographs of Oglesby and Mitchell, during the bank robbery.

After ordering their victims to lie face-down in a rear room of the bank, the two men fled in a yellow Camaro with Tennessee license plates. The two men drove to an apartment complex where they abandoned the Camaro and paid a Bernard Bolden $40.00 to drive them to a location in East St. Louis, Illinois. After leaving the men in East St. Louis, Bolden returned to the apartment complex where he was detained and questioned by the police. Bolden later accompanied the police to the East St. Louis address to which he had transported the men. The police located and apprehended the two subjects, searched the house where they were temporarily residing, and recovered a .38-caliber Derrenger, a .357 Magnum Smith & Wesson revolver, and a large sum of money. The police removed one of the bait bills from Mitchell's pockets and about $1,500 in cash.

Oglesby was taken to the FBI office in Belleville where he was questioned by an FBI Agent. Oglesby was informed of his *Miranda* rights and was advised that if he cooperated with the authority's investigation of the bank robbery, his cooperation would be made known to the United States Attorney's office. Subsequently, Oglesby gave a statement admitting his participation in the robbery.

## II.

### A. Severance.

On the first day of trial before the jury was sworn, Mitchell requested the court to allow him to proceed *pro se*. The court granted Mitchell's request, and immediately thereafter Oglesby moved for a severance, claiming that his accomplice's *pro se* defense would prejudice his own defense. This motion was denied. Oglesby failed to renew his severance motion during trial and now argues that Mitchell, in conducting his own defense, prejudiced his (Mitchell's) case. According to Oglesby, the prejudice to Mitchell's case "spilled over" to Oglesby's case and prejudiced his right to a fair trial. Specifically, Oglesby objects to Mitchell's solicitation of evidence referring to testimony that the getaway car was a stolen vehicle—a fact that Oglesby had successfully suppressed in a pretrial motion *in limine*. Additionally, Oglesby directs our attention to Bolden's testimony during Mitchell's cross-examination concerning drug use by Mitchell and identification of one of the weapons used during the robbery.

"Motions for severance are committed to the sound discretion of the trial court and will be overturned on appeal only upon a showing of abuse of discretion." *United States v. Oxford*, 735 F.2d 276, 279 (7th Cir.1984), (*citing Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954)). The law in this circuit is well settled that review of the trial court's exercise of discretion in refusing a motion for severance "must be based on the state of the record at the time of the motion." *United States v. Pacente*, 503 F.2d 543, 546 (7th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *Oxford*, 735 F.2d at 279. On appeal, the de-

fendant has the burden of demonstrating that he was prejudiced by the joint trial. *See United States v. Black,* 684 F.2d 481, 485 (7th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982). The question of whether a trial of two defendants tried simultaneously infringes upon a defendant's right to a fair trial depends on whether it is within the jury's capacity in the particular fact situation to follow admonitory instructions and to keep separate, collate and appraise the evidence relevant only to each defendant. *United States v. Hedman,* 630 F.2d 1184, 1200 (7th Cir. 1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). A trial involving a *pro se* defendant and co-defendants who are assisted by counsel is not prejudicial *per se. United States v. Veteto,* 701 F.2d 136, 139 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 131, 78 L.Ed.2d 127 (1983); *United States v. Sacco,* 563 F.2d 552, 556–57 (2d Cir.1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978). Courts confronted with this problem in joint trials, in which one defendant wants to proceed *pro se* and the other defendant is represented by counsel, have recommended and suggested, but have not required, that the district court minimize the prejudice to co-defendants by:

> "appointing standby counsel, warning the *pro se* defendant that he will be held to the rules of law and evidence and that he should refrain from speaking in the first person in his comments on the evidence, and instructing the jury prior to the closing remarks, during summation, and in final instructions, that nothing the lawyers said is evidence in this case. [T]he district judge should also make clear to the jury at the outset that anything the *pro se* defendant says in his 'lawyer' role is not evidence and should instruct the *pro se* defendant beforehand that he should both avoid reference to co-defendants in any opening statement or summation without prior permission of the court and refrain from comment-

ing on matters not in evidence or solely within his personal knowledge or belief." *Veteto,* 701 F.2d at 138–39, *citing Sacco,* 563 F.2d at 556–57. We agree with the Second and Eleventh Circuits, and decline to make these suggested precautionary measures mandatory. *Veteto,* 701 F.2d at 139; *Sacco,* 563 F.2d at 556–57. Furthermore, we note that when Mitchell made his motion to proceed *pro se,* the trial judge warned Mitchell about the perils of proceeding *pro se* and in fact appointed standby counsel. Thus, Judge Beatty followed the accepted procedure and attempted to minimize the prejudice to Oglesby. Moreover, a review of the record discloses that at the time of his motion for severance, Oglesby did not and could not present to the trial judge any problem arising from the joint trial that would rise to the level of prejudicial error. Specifically, Oglesby failed to demonstrate that a joint trial with a co-defendant proceeding *pro se* would raise difficulties such as: (1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive, *see, e.g., United States v. Shively,* 715 F.2d 260 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); (2) a massive and complex quantity of evidence making it almost impossible for the jury to separate evidence as it related to each defendant when determining each defendant's innocence or guilt, *see, e.g., United States v. Cavale,* 688 F.2d 1098 (7th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 513 (1982); (3) a co-defendant's statement inculpating the moving defendant, *see, e.g., United States v. Holleman,* 575 F.2d 139 (7th Cir.1978); (4) or gross disparity in the weight of the evidence against the defendants, *see, e.g., United States v. Hedman,* 630 F.2d 1184 (7th Cir. 1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Because Oglesby failed to establish how he would specifically be prejudiced by Mitchell's *pro se* representation, we hold that the district court did not abuse its discretion in denying Oglesby's motion to sever.[1]

---

**1.** Even if we were to overlook Oglesby's failure to renew his motion and allow him to base his

arguments on events that occurred after the motion was denied, we still would hold that

## B. Suppression.

After his arrest, Oglesby was transported to the FBI office in Belleville, Illinois, where he was questioned by FBI agents after being advised of his rights. Oglesby contends that before he made a statement admitting his participation in the robbery of the Illini Federal Savings and Loan, the FBI agent conducting the interview advised him that "things would go easier for him if he made a statement; that his cooperation would be made known to the United States Attorney; and that he ... would get 'probably about five years' if he gave a statement." At trial, Oglesby moved to suppress the confession as being involuntary, alleging that he would not have made a statement had the agent not made the representations. The motion was denied.

In *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973), the Supreme Court summarized the nature of the inquiry into the voluntariness of a confession:

> "Is the confession a product of an essentially free and unconstrained voice by his maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.
>
> In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted."

Id. at 225–26, 93 S.Ct. at 2046–47 (citations omitted).

We turn first to the examination of the method of interrogation. Oglesby's sole argument is that the agent's promise that his cooperation would be made known to the United States Attorney's office and the alleged promise that he would get five years if he made a statement overbore his will, causing him to confess. Thus, our examination must initially focus on whether the agent in fact made the promises on which Oglesby says he relies. On cross-examination, Oglesby was unable to recall the exact words of the agent:

> Q. "Did he say that was what you would get, that's what he would ask the

---

Oglesby was not prejudiced by Mitchell's *pro se* defense. Oglesby bases his novel "spill-over" argument on Mitchell's cross-examination of Bolden in which Mitchell elicited testimony that the getaway car was stolen and in which Bolden accused Mitchell of using drugs. During Mitchell's cross-examination, Bolden testified that he, Bolden, was a drug-user. Because he wanted to avoid being cut-off from his drug supply by being in jail, Bolden stated that he avoids situations that would cause him to be jailed. Mitchell established that Bolden knew the yellow Camaro was stolen and that one of the men was carrying a gun when he accepted $40.00 from the men to give them a ride to another location. Mitchell asked Bolden, and later argued to the jury, whether these were the actions of a man trying to avoid situations that would cause him to be jailed. Mitchell bolstered his attack on Bolden's credibility in closing argument by noting that Bolden had not been arrested for aiding the robbers during their escape, raising the implication that Bolden had fabricated his testimony to avoid arrest. Similarly, Mitchell's questioning of Bolden about his identification of the .357 Magnum revolver, to which Oglesby now objects, centered on Bolden's pretrial statement that the gun's holster was tan. The holster produced at trial was black. Rather than recognizing the prejudice urged by Oglesby, we hold that Mitchell's cross-examination of Bolden was a cogent attack on Bolden's credibility. Because a review of the record fails to disclose prejudice to Mitchell, there could not have been a "spill-over" of prejudice to Oglesby; thus, Oglesby has failed to establish that the district court abused its discretion when it denied his motion to sever his trial from that of his co-defendant.

United States Attorney's office to recommend, that's what the United States Attorney's office would recommend, or that's what the sentence that the court imposed would be, I mean what was it?"

A. "I don't recall verbatim exactly what he said. I just don't recall as of that particular time and still don't recall. I have got a vague idea of what he said." The trial court found, "I don't think that we could find from this evidence that there was any commitment made by the agent that he was going to get five years." The factual determinations made by the trial court when ruling on a motion to suppress will be accepted on appeal unless they are clearly erroneous. *United States v. Ganter*, 436 F.2d 364, 368 (7th Cir.1970). From our review it is evident that Oglesby failed to produce any evidence establishing that the agent in fact promised him that he would get five years if he made a statement. Accordingly, we hold that the trial court properly found that the agent did not promise Oglesby that he would get five years if he made a statement.

■ Turning to the second element of the voluntariness analysis—the characteristics of the accused—we reach the question of whether the agent's promise to make Oglesby's cooperation known to the United States Attorney overbore Oglesby's will. Important among the defendant's characteristics in determining whether his confession was voluntary are the defendant's age, education, and experience with the police. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047; *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). Oglesby had three prior felony convictions, including a prior conviction for armed robbery, had earned some 200 hours of college credit, and was 54 years of age at the time of his confession. Thus, the record reveals that the defendant was not disadvantaged by youthful ignorance or the naivete born of inexperience. From our review we hold that the defendant, a 54-year-old man who had frequent contacts with the criminal justice system in the past (three felony convictions—from initial interrogation through the trial and sentencing stages)

and had a substantial number of college credit hours was able to resist whatever pressure was brought to bear on him by the FBI agent's promise to make his cooperation known to the United States Attorney, if in fact any such statement was made by the agent; therefore, we hold that the district court ruled properly in denying Oglesby's motion to suppress the confession.

## C. The Motion for Judgment of Acquittal and the Sentence.

■ Oglesby argues that his motion for judgment of acquittal, made at the end of the government's case, and renewed after the completion of the evidence, should have been granted because the government relied on an in-court identification in lieu of an out-of-court line-up or photographic identification procedure. According to Oglesby, an in-court identification is inherently untrustworthy and should not be the basis of a conviction. Additionally, Oglesby argues that any number of people could have had access to the room in the East St. Louis house in which the money and weapons were seized and that Oglesby's fingerprints were not found in the getaway car. The jury considered, among other items, bank photographs portraying the defendant's role in the robbery as well as the defendant's voluntary confession of his participation in the crime. We are convinced that the wealth of direct and circumstantial evidence in the record entitled the jury to find the defendant guilty beyond a reasonable doubt. Furthermore, the defendant's contention that the in-court identification was untrustworthy is likewise without merit. Based upon the witnesses' testimony it is evident that they were both standing in close proximity to the defendant during the bank robbery and had ample opportunity to view the defendant close-up for a period of time. Because the record supports the accuracy of the witnesses' identification of Oglesby, his mere allegation that in-court identifications are untrustworthy fails to persuade us to disregard the in-court identifications. Based

on the evidence presented by the government in its case-in-chief, we hold that the jury's verdict was not the product of speculation.

The defendant finally argues that his sentence of twenty years constitutes cruel and unusual punishment. The defendant notes that he cooperated with authorities, that he has had no felony or misdemeanor convictions for the last eleven years, and that no one was injured in the crime under consideration. The defendant contends that these three factors render the twenty-year sentence cruel and unusual in violation of the Eighth Amendment to the United States Constitution. The sentence given to Oglesby was within the statutory limit; the maximum sentence for a violation of 18 U.S.C. § 2113(a) and (d) is a fine of $10,000.00 and/or 25 years imprisonment. Oglesby has not shown that the trial judge relied on material misinformation or constitutionally impermissible factors in imposing the sentence. A sentence imposed by a Federal judge in 1984, if within statutory limits, is not subject to review unless the trial court relied on material misinformation or constitutionally impermissible factors. *United States v. Tucker*, 404 U.S. 443, 446–47, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *United States v. Carter*, 720 F.2d 941, 951 (7th Cir.1983).

The defendant has failed to demonstrate that his sentence constitutes cruel and unusual punishment.

The judgment of the district court is AFFIRMED.