**UNITED STATES of America, Plaintiff,**

v.

**Christ SAVIDES, et al., Defendants.**

**No. 87 CR 17.**

United States District Court,
N.D. Illinois, E.D.

July 21, 1987.

Anton R. Valukas, U.S. Atty. by Thomas L. Knight and William Cook, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Christopher Cronson, Oak Park, Ill., for defendant Cialoni.

## ORDER

BUA, District Judge.

This matter concerns defendant Cialoni's motion to suppress statements given to government officers on the basis they were involuntary. For the reasons stated herein, this court concludes Cialoni's statements were voluntary, and thus, Cialoni's motion to suppress is denied.

## I. FACTS

After conducting a series of hearings at which testimony was offered by both parties, the following facts emerged. Cialoni, having been charged with certain state offenses, decided to contact Drug Enforcement Agency (DEA) agents investigating Christ Savides. Due to his prior criminal record and severity of the charges pending against him, Cialoni apparently decided to barter information for help in his state court case.

On May 22, 1986, Cialoni met DEA Agents Thompson and Evans on a street corner in Franklin Park, Illinois. Cialoni began the meeting by informing the agents that he was present to tell the agents what he wanted in exchange for information about Savides. Rejecting a grocery list of demands made by Cialoni, the agents simply informed Cialoni that if he offered truthful and accurate information from which detailed leads could be developed, his cooperation would be made known to the prosecutor in the state action. After agents read Cialoni his *Miranda* rights, Cialoni proceeded to admit his long-time criminal involvement with Savides in vari-

ous cocaine and gambling operations and disclosed general information about other individuals criminally associated with Savides. At the end of the meeting it was agreed that Cialoni would keep in contact and detail the general overview he had provided concerning Savides' criminal activities. Although two subsequent meetings took place in August while Cialoni was incarcerated at the Metropolitan Correctional Center (MCC) on unrelated charges, Cialoni failed to provide agents with any additional information. Believing Cialoni's limited cooperation did not fulfill his obligations under their agreement, the agents decided not to contact the State's Attorney Office about the pending state case. Based in large part on the information Cialoni provided the agents, Cialoni was indicted for violations of federal narcotics laws.

## II. DISCUSSION

■ Whether a confession by a defendant is involuntary must be decided in light of the totality of circumstances preceding the statement. Both the characteristics of the accused and the details of the interrogation must be examined under this analysis. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973). Some of the factors the Supreme Court has taken into account include: "youth of the accused; his lack of education; or his low intelligence; lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Schneckloth*, 412 U.S. at 225–26, 93 S.Ct. at 2046–47.

With regard to the method of interrogation, Cialoni's only objection is that agents allegedly made three promises in return for his cooperation: (1) information he disclosed would not be used against him; (2) he would not have to testify against Savides; and (3) he would be assisted in his state case in return for supplying information. Cialoni argues that because these promises were not kept, the statements he made to the agents are involuntary and inadmissible under *Bram v. United States*,

168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Cialoni also asserts that despite the testimony of the two agents, he was never informed of his *Miranda* rights. Thus, the issues presented are whether the promises were in fact made and broken and whether *Miranda* warnings were given.

■ Weighing the credibility of the witnesses, this court finds that the only promise made to Cialoni was that DEA officials would inform the state prosecutor of Cialoni's cooperation if the information Cialoni provided proved to be truthful as well as valuable in investigating the criminal activities of Savides and his associates. Both Agent Thompson and Agent Evans testified that although Cialoni made numerous demands before offering information, Cialoni was explicitly told that the only thing they were willing to offer was assistance in the state case if his information was truthful and helpful. Both agents also testified that although Cialoni agreed to keep in contact and provide detail needed to make the general information he disclosed helpful, no subsequent contacts were initiated by Cialoni and no meaningful additional information was ever offered after the May 22 meeting. Because this court finds the cooperation Cialoni agreed to provide was never given, this court is unable to conclude that the agents' failure to contact the state prosecutor about Cialoni's cooperation constituted a breach of an express or implied promise which renders Cialoni's statements involuntary under *Bram v. United States.*

■ The agents also testified that Cialoni was given full *Miranda* warnings before he decided to disclose any information at the May 22 meeting. Based on this court's observations of the agents and Cialoni, during the hearing, this court is inclined to believe the *Miranda* warnings were given and fully understood by Cialoni. As the agents explicitly informed Cialoni that any statements he made could be used against him in subsequent prosecutions, this court cannot say Cialoni was ignorant of the consequences of making incriminating statements to the agents. In the present case, no claims are made that the agents used any coercive interrogation tactics such as long periods of detention, prolonged questioning or threats of physical harm. The fact agents may not have repeated *Miranda* warnings at subsequent meetings while Cialoni was incarcerated on unrelated charges does not dictate that his statements must be held involuntary. Admonishing a defendant of his *Miranda* rights is but one of the many circumstances which must be weighed under the totality test. Cialoni argues that *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) requires suppression of all statements obtained from defendants while in custody when no *Miranda* warnings are given. However, *Mathis* does not control the facts before this court because Cialoni was previously advised of his *Miranda* rights at the May 22 meeting and disclosed virtually all of the incriminating information at that time. Thus, even if *Mathis* were found to apply to information learned at the two subsequent meetings, Cialoni's statements at the May 22 meeting would be unaffected.

■ The second element of the voluntariness analysis requires an examination of the characteristics of the accused. *United States v. Oglesby,* 764 F.2d 1273, 1278 (7th Cir.1985). The issue here is whether the agents' promise to make Cialoni's cooperation known to the state prosecutor under the conditions mentioned overbore Cialoni's will and impaired his capacity for self determination. *Schneckloth,* 412 U.S. at 225, 93 S.Ct. at 2046; *Oglesby,* 764 F.2d at 1278. Important among the defendant's characteristics in determining whether his confession was voluntary are the defendant's age, mental status, and experience with police. Cialoni is a man in his early fifties who appeared on the witness stand to be an intelligent and perceptive individual. Although this court is aware that Cialoni has a cocaine problem, no argument is advanced that he used cocaine prior to speaking with the agents or that he was in any way affected by narcotics during the meetings in question. As such, this court can assume that Cialoni possessed the same normal mental status during the meetings

as he did in court. Moreover, Cialoni's extensive history of arrests and numerous convictions at both state and federal levels undercut any contention that Cialoni was inexperienced in dealing with law enforcement officials. This is not a case where the defendant was disadvantaged by "youthful ignorance or the naivete borne of inexperience." *Olgesby*, 764 F.2d at 1278. Based on the foregoing facts this court finds that Cialoni was able to resist whatever pressure that was brought to bear on him by the agents' promise to make his cooperation known if he provided truthful and valuable information. In light of the totality of circumstances, this court concludes Cialoni's statements were voluntary.

### III. CONCLUSION

For the foregoing reasons, defendant Cialoni's motion to suppress statements is denied.

IT IS SO ORDERED.