948 F.2d 1292
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Larry TINKER, Defendant/Appellant.
 No. 90-3115.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 30, 1991.
Decided Nov. 25, 1991.
 
 Before EASTERBROOK, Circuit Judge, and RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Larry Tinker pled guilty to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced under pre-Sentencing Guidelines law to twelve years imprisonment. That sentence is the subject of this appeal. For the following reasons, we affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 Mr. Tinker, who was indicted on a charge of conspiracy to distribute methamphetamine, entered a plea agreement with the government pursuant to Federal Rule of Criminal Procedure 11(e)(1)(A). Mr. Tinker agreed to plead guilty to possession of methamphetamine with intent to distribute. In return, the government agreed to move to dismiss the conspiracy charge. The plea agreement expressly stated that the court was not a party to the agreement and that the court was free to impose the maximum statutory penalty of twenty years imprisonment, a fine of $1,000,000, and at least three years of parole. However, the government also agreed that it would recommend a sentence which would make Mr. Tinker eligible for release at the mid-point of the parole release range determined by the United States Probation Office. The defendant was free to request whatever sentence he deemed appropriate.
 
 
 4
 The plea agreement also provided that "the defendant understands that the United States Attorney's Office will fully apprise the District court and the United States Probation office of the nature, scope and extent of defendant's conduct regarding the charge against him, and to related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." A presentence report was prepared. Before the sentencing hearing, Mr. Tinker filed objections to the accuracy of certain portions of the presentence report. He withdrew these objections at the hearing. The court admonished Mr. Tinker that this was his opportunity to challenge anything inaccurate or incomplete in the report. Mr. Tinker was also offered the opportunity to present evidence in mitigation.
 
 
 5
 At the sentencing, the government recommended 93 months, and Mr. Tinker requested probation. In sentencing Mr. Tinker to twelve years, the court relied on information contained in the presentence report. The presentence report set out Mr. Tinker's prior criminal record, including a 1989 conviction for unlawful use of a weapon. That conviction stemmed from a traffic stop, during which officers found in Mr. Tinker's car a .44 caliber magnum loaded with hollow-point bullets. The report also detailed other drug activity by Mr. Tinker and noted that Mr. Tinker had pled guilty in state court to possession of methamphetamine and was awaiting sentencing for that offense. Also before the district court was a bond violation report.
 
 
 6
 In challenging his sentence, Mr. Tinker's basic contention is that in determining his sentence the district court improperly relied on the nature and purpose of the hollow-point bullets. At the hearing, the court remarked: "I'm not sure why you wanted hollow point ammunition. As far as I know, hollow points are only good to kill people with."
 
 II
 ANALYSIS
 
 7
 The principles of law governing our review of Mr. Tinker's sentence can be easily stated. Under pre-Guidelines law, the district court had wide discretion in the imposition of sentence. United States v. Rife, 835 F.2d 154, 156 (7th Cir.1987). In determining a sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Tucker, 404 U.S. 443, 446 (1972). "Once it is determined that the sentence is within the statutory limitation, [under pre-Guidelines law] appellate review is at an end, unless the trial court relied on material misinformation or constitutionally impermissible factors." Rife, 835 F.2d at 156 (citing United States v. Oglesby, 764 F.2d 1273, 1279 (7th Cir.1985).
 
 
 8
 In sentencing Mr. Tinker, the district court transgressed none of the limitations set on its discretion: Mr. Tinker's sentence was within the statutory range. No claim has been made that the trial court relied on constitutionally impermissible factors. Nor does Mr. Tinker assert that the court relied on inaccurate information; moreover, he withdrew his objections to the sentence report on record at the sentencing hearing. Mr. Tinker's only challenge to his sentence is that the court took into account the nature and purpose of the ammunition involved in his prior conviction for illegal use of weapons.
 
 
 9
 In evaluating Mr. Tinker's contentions, we first note that it is highly improbable that the nature of the bullets played a significant role in the district court's decision to impose a sentence greater than that recommended by the government. Although the district court commented on the hollow point bullets involved in Mr. Tinker's earlier conviction, the court explicitly relied on the weapons conviction itself, the conviction in state court, the other drug activity, and Mr. Tinker's violation of the conditions of his bond. The court also noted that the 93 month sentence recommended by the government would not be proportionate to sentences he had meted out to other defendants convicted of similar charges.
 
 
 10
 Secondly, even if the nature and purpose of the hollow point bullets did influence the length of the sentence given to Mr. Tinker, he makes no effort to show that he was prejudiced. When asked, his appellate counsel could think of no purpose for hollow point bullets, other than killing people. As Justice Frankfurter said, we "should not be ignorant as judges of what we know as men." Watts v. Indiana, 338 U.S. 49, 52 (1949). Neither can we expect that an experienced district court judge will forget what it means to carry a gun loaded with dumdum bullets.
 
 
 11
 No extended elaboration is required with respect to the plea agreement. It is clear that the agreement was not violated. Mr. Tinker might have bargained for a plea agreement pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), under which the parties agree to a specific sentence. If the court had rejected such an agreement, the defendant would have been entitled to withdraw his guilty plea. Fed.R.Crim.P. 11(e)(4). Mr. Tinker made no such bargain. Indeed, the agreement spelled out the possibility that the court might reject the government's recommended sentence and that Mr. Tinker might receive a sentence of up to twenty years.
 
 Conclusion
 
 12
 For the foregoing reasons, the judgement of the district court is affirmed.
 
 
 13
 AFFIRMED.