64 F.3d 665
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joseph CHILLERS, Petitioner-Appellant,
v.
Richard B. GRAMLEY, Warden,** Respondent-Appellee.
 No. 94-1667.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 26, 1995.*
Decided Aug. 17, 1995.
 
 Before BAUER, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Joseph Chillers, an Illinois prisoner, brought this pro se petition for habeas corpus relief under 28 U.S.C. Sec. 2254, alleging that his pretrial confession to murder was based on false promises of leniency, and thus not voluntary. The district court denied his petition, concluding that Chillers gave inculpatory statements without any inducement or promises. On appeal, Chillers renews his contention that his confession was involuntary. We affirm.
 
 BACKGROUND
 
 2
 The appellate court summarized the evidence presented at trial against Chillers, as follows.[1] On the evening of July 3, 1982, Chillers and a friend stole two six-packs of beer from a liquor store. A store employee, who along with the store owner had been standing at the cash register near the entrance, saw Chillers and the other man take the beer. The employee grabbed a loaded revolver from the top of the register and ordered Chillers to stop. Chillers testified that a man behind the counter yelled at him, "You gonna get shot. You gonna get shot." Chillers admitted, however, that he did not see either the employee or the owner holding a gun at that time. After Chillers stumbled out the door and began running down the alley, a few cans of beer fell to the ground. As Chillers stooped to pick up the cans, the store owner began to chase after Chillers. A witness testified that the store owner was not carrying a weapon. Chillers testified that the store owner pursued him, shouting "You're gonna get shot, you're gonna get shot." Chillers also admitted that at that time, he did not notice a gun in the owner's hand. When the owner approached to within five feet, Chillers pulled out a loaded pistol concealed in his clothing and shot the owner in the head, killing him. No gun was found near the store owner's body.
 
 
 3
 Prior to the bench trial, Chillers moved to suppress inculpatory statements he had made to the police on the day after the shooting. According to testimony presented at the pretrial hearing, Chillers was brought to the police station on the morning of July 4, 1982. He was advised of his constitutional rights and then questioned by detectives for about one hour. During that interrogation, he denied the shooting. Later that evening, assistant State's Attorney Paul Zido met with Chillers. Zido read Chillers his Miranda rights, and Chillers responded that he understood those rights. Chillers purportedly again denied the shooting. After twenty minutes of questioning, Chillers was allowed to talk privately with his aunt and another woman who were at the station. A few minutes later, Zido reentered, and Chillers' aunt explained that Chillers was prepared to speak to Zido. Chillers stated that his aunt told him to tell the truth. Chillers then confessed to the murder. A court reporter was called to the police station. Zido again read Chillers his constitutional rights, and Chillers responded that he understood these rights. Chillers signed a written waiver of rights form, the contents of which he told Zido he understood. Zido took Chillers' written statement, which was then transcribed by the court reporter. The statement was read back to Chillers, who made a few changes before signing his name to it.
 
 
 4
 Conflicting testimony was then presented about an alleged promise made by Zido. Chillers testified that Zido told him that Chillers would only be charged with manslaughter if he made a statement. Chillers' aunt corroborated this version of the events and stated that the promise was made before Chillers' oral confession. Zido, however, denied ever making such a promise.
 
 
 5
 The trial court denied Chillers' motion to suppress, finding that Chillers had been advised of, and then waived, his Miranda rights before he made his inculpatory statements. The court also found that the assistant State's Attorney did not tell Chillers that he would reduce Chillers' charge to manslaughter if Chillers made a statement. The trial judge added that he believed the subject of manslaughter did arise, but not until after Chillers had made his oral confession.
 
 
 6
 Chillers was convicted of murder and armed violence following a bench trial, and was sentenced to thirty years in prison on the murder conviction.[2] The Illinois appellate court affirmed Chillers' conviction and sentence, and the Illinois Supreme Court denied his petition for leave to appeal.
 
 
 7
 In May 1993, after exhausting his direct appeals and serving ten years of his thirty-year murder sentence, Chillers filed his petition for habeas relief. He raised three claims: (1) the introduction of his pretrial statements violated his Fifth Amendment right against self-incrimination; (2) the evidence supported a finding of self-defense and conviction for manslaughter; and (3) his sentence was excessive. The district court denied Chillers' petition, addressing the first claim on the merits and finding that Chillers had procedurally defaulted the remaining two claims.
 
 DISCUSSION
 
 8
 On appeal, Chillers reiterates that his confession was based on false promises of leniency, and thus was not voluntary and should have been suppressed. Chillers asserts that he was offered a "deal" for his confession, specifically that he would be charged with manslaughter.
 
 
 9
 The ultimate constitutional question of whether, under the totality of the circumstances, a confession is admissible is a mixed question of fact and law subject to de novo review in a habeas corpus proceeding. Lord v. Duckworth, 29 F.3d 1216, 1221-22 (7th Cir.1994); cf. United States v. Baldwin, No. 94-1025, slip op. at 4 (7th Cir. July 19, 1995) (standard for appellate review of determination of voluntariness of statement is clear error). Factors relevant to this inquiry include the age of the defendant, his lack of education or low intelligence, the nature of the questioning, the use of physical punishment, the lack of advice to the accused of his constitutional rights, the duration of the questioning, and the accused's prior experience with the police. Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)); Holland v. McGinnis, 963 F.2d 1044, 1052 (7th Cir.1992), cert. denied, 113 S.Ct. 1053 (1993).
 
 
 10
 Chillers asserts, first, that the record does not support the district court's conclusion that he was aware of the criminal process at the time he made his inculpatory statement. Chillers admits that he had ten prior arrests, but argues that these were "minor infractions with the law" and, presumably, irrelevant to his experience with the criminal justice system. Chillers' prior experience with the police, however, is significant. Chillers was arrested ten times as a juvenile and three times as an adult prior to his arrest on the present murder charge. Chillers' familiarity with police procedure strongly suggests that he "was not disadvantaged by youthful ignorance or the naivete born of inexperience." Holland, 963 F.2d at 1052 (quoting United States v. Oglesby, 764 F.2d 1273, 1278 (7th Cir.1985)); Lord, 29 F.3d at 1222.
 
 
 11
 Chillers also argues that he is functionally illiterate, and therefore, was incapable twelve years ago of making an uncoerced, rational decision to confess. Chillers' lack of education, however, is only one of many factors considered in a totality of the circumstances inquiry. Lord, 29 F.3d at 1222 (citing Schneckloth, 412 U.S. at 225-26)). The record reflects that Chillers was read his Miranda rights shortly after his arrest as well as before any questioning, and each time Chillers answered questions he stated that he understood his constitutional rights. The record further shows that before Chillers gave his written statement, he again was read his Miranda rights and also signed a written waiver of rights. In light of the totality of the circumstances surrounding Chillers' confession, Chillers' low level of education does not render his statements involuntary. See Miller v. Fenton, 474 U.S. 104 (1985).
 
 
 12
 Chillers next contends that the district court should have considered his claims that (1) he shot the store owner in self-defense and that (2) he received an excessive sentence. We agree with the district court, however, that Chillers procedurally defaulted these claims when he failed to present them properly to the state courts. Chillers is barred from raising his self-defense claim because he did not raise it as a federal constitutional claim in his appeal to the Illinois appellate court. Everette v. Roth, 37 F.3d 257, 260 (7th Cir.1994) (citing United States ex rel. Spurlark v. Wolff, 699 F.2d 354 (7th Cir.1983) (en banc)), cert. denied, --- S.Ct. ----, 63 U.S.L.W. 3906 (June 26, 1995). Similarly, Chillers procedurally defaulted his sentencing claim because he failed to raise it at all before the state courts. Nutall v. Greer, 764 F.2d 462, 465 (7th Cir.1985).
 
 
 13
 Finally, Chillers argues that his procedural default on the self-defense and sentencing claims should be excused because his appellate counsel rendered ineffective assistance. Although ineffective assistance of counsel may be considered cause for procedural default, a petitioner must first present this claim as an independent claim to the state courts. Lemons v. O'Sullivan, 54 F.3d 357, 360 (7th Cir.1995). Illinois courts have held that claims of ineffective assistance of appellate counsel are properly adjudicated in proceedings on petition for postconviction relief. Id. at n. 2 (citing Illinois cases). Because Chillers failed to present such a claim in a state court petition for postconviction relief, he procedurally defaulted this claim. Id. at 360-61. Further, because Chillers made no showing of cause "external" to his ineffective assistance claim, the merits of this claim are unreviewable. Id. at 361.
 
 CONCLUSION
 
 14
 The district court's decision to deny Chillers' petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 **
 Richard B. Gramley, Warden of the Pontiac Correctional Center, is Chillers' present custodian, and thus he is substituted for George C. Welborn, the former Warden of the Menard Correctional Center, who was originally named as the respondent in this action. Fed.R.App.P. 43
 
 
 [1]
 In a habeas corpus proceeding, findings of fact made by a state appellate court are afforded the same presumption of accuracy as findings made by the state trial court. 28 U.S.C. Sec. 2254(d); Milone v. Camp, 22 F.3d 693, 697 n. 2 (7th Cir.1994), cert. denied, 115 S.Ct. 720 (1995)
 
 
 [2]
 No sentence was imposed on the armed violence conviction, an offense which the court found merged with the murder