UNITED STATES of America,
Plaintiff-Appellee,

v.

Elmer KECK, Larry Hill, Diane Hise,
Diana Elliott, Terry Beasley, and
Debbie Hill, Defendants-Appellants.

Nos. 84–1283, 84–1336, 84–1344,
84–1393 and 84–1394.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1985.

Decided Aug. 30, 1985.

Richard Cox, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Asher O. Geisler, Geisler Waks & Geisler, Decatur, Ill., for defendants-appellants.

Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

After a joint trial, a jury convicted defendants Larry and Debbie Hill, Elmer Keck, Diane Hise, Diana Elliott, and Terry Beasley on various drug charges, including conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Defendants challenge their convictions on appeal. They contend, among other things, that the indictment was defective, that the district court abused its discretion in failing to grant a severance, that the district court improperly instructed the jury on the nature of a conspiracy, and that the court abused its discretion on certain evidentiary rulings.

### I. Facts and Proceedings Below

On January 11, 1983, the Government obtained a court order permitting it to intercept and record telephone conversations made to and from Larry and Debbie Hill's residence. Over the next six weeks, agents of the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA) recorded numerous phone conversations between Larry or Debbie Hill and the other defendants. The Government offered and the court admitted thirty-six of these conversations at trial. During these conversations, defendants discussed narcotics extensively, using terms such as "snowblow," "coke," and "T," which Government witnesses testified are slang terms for cocaine and phencyclidine (PCP). Defendants argued, and the jury apparently rejected, that the absence of any direct references to cocaine and PCP in these conversations precluded the Government from establishing that drugs were discussed in the conversations. In fact, in some of the conversations admitted at trial, Larry Hill admonished the other defendants not to say anything over the telephone.

While these conversations constituted the core of the Government's case against defendants, the Government also offered testimony of various undercover agents who had conducted surveillance of defendants' activities and who had arranged a number of cocaine purchases from two of the original defendants who pled guilty before trial. During the final purchase, which precipitated defendants' arrests, agents recovered one and one-half pounds of cocaine from the floor of Terry Beasley's car, which, according to the Government, Beasley intended to deliver to a DEA agent in exchange for $41,000. Following defendants' arrests, agents executed search warrants on the homes of Larry and Debbie Hill, Elmer Keck, Terry Beasley, and Diana Elliott. Agents seized, among other items, a lockbox found in Elliott's house that contained approximately one and three-quarters pounds of PCP and two smaller packages of cocaine. When agents arrested Larry Hill, they discovered that he was carrying two keys, one of which opened the lock to Elliott's house and the other of which opened the lockbox.

A few months later, on July 15, 1983, a grand jury returned a forty-three count indictment against the named defendants in this appeal and against six other defendants. Four of the latter group pled guilty to various charges and two of them were acquitted after trial.

With respect to defendants in this appeal, the indictment charged them with a variety of drug-related offenses. Specifically, the indictment charged defendants

Larry and Debbie Hill, Terry Beasley, Elmer Keck, Diana Elliott, and Diane Hise with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; Larry Hill with two counts, and Beasley with one count, of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); Larry Hill with possession with intent to distribute PCP in violation of 21 U.S.C. § 841(a)(1); Larry Hill, Beasley, Elliott, and Hise with aiding and abetting possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Elliott with aiding and abetting possession with intent to distribute PCP in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Larry Hill with sixteen counts, Beasley with nine counts, Debbie Hill with four counts, Keck and Hise with three counts, and Elliott with two counts, of using a telephone to facilitate the commission of a controlled substance felony in violation of 21 U.S.C. § 843(b); Larry Hill with receipt of a firearm by a convicted felon in violation of 18 U.S.C. § 922(h) [1]; Larry Hill with six counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1) [2]; and, Beasley with unlawfully carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2).

The jury convicted Larry Hill on all counts against him except two of the sixteen counts of using a telephone to facilitate the commission of a felony. Similarly, the jury convicted Debbie Hill and Keck on all counts against them except one of the telephone counts. The jury convicted Beasley and Elliott on all counts and convicted Hise only on the conspiracy and aiding and abetting charges.

The judge sentenced Larry Hill to a fifteen-year term of imprisonment on the conspiracy count, a seven-year term of imprisonment and a three-year special parole term on each of the three counts concerning possession of, and aiding and abetting the possession of, cocaine. The judge ordered these seven-year terms to run con-

currently with each other and consecutively to the fifteen-year term. On the remaining counts, the judge suspended sentences and imposed five-year probation terms.

Debbie Hill received a three-year term of imprisonment on each of the telephone counts on which she was convicted, each term to run concurrently with one another. On the conspiracy count, she received a five-year probation term. The judge sentenced Beasley to a ten-year term of imprisonment on each of the counts concerning the conspiracy, possession of cocaine, and aiding and abetting the possession of cocaine. These terms are to run concurrently with one another. Additionally, the judge imposed a three-year special parole term on the possession and aiding and abetting counts. Beasley received five-year probation terms on the remaining counts.

The judge sentenced Keck to a ten-year term of imprisonment on the conspiracy count. On the telephone counts, he received five-year terms of probation. Hise and Elliott both received suspended sentences and five-year probation terms on all the counts on which they were convicted.

Defendants raise numerous issues on appeal which, they contend, merit reversal of their convictions. First, all defendants contend that the counts alleging violations of 21 U.S.C. § 843(b) were defective because they failed to allege the particular controlled substance involved and the manner in which defendants used the telephone to facilitate the conspiracy. Second, all defendants except Larry Hill argue that the district court abused its discretion in failing to grant a severance of their trials from Larry Hill's trial. Third, defendants challenge the court's decision to permit the Government to provide the jury with transcripts of the tape recordings that contained the identities of the speakers in the margins. Fourth, Larry and Debbie Hill contend that the court should have excluded various recordings of conversations that occurred between them as privileged com-

---

1. The trial court severed this count prior to trial.

2. The trial court severed five of these six counts prior to trial.

munications. Fifth, Debbie Hill, Hise, and Elliott argue that the court should have excluded the conversation that occurred between Hise and Hill after Hise's arrest. Sixth, defendants claim that the court improperly instructed the jury on the law of conspiracy. Seventh, Elliott argues for reversal of her convictions for aiding and abetting possession with intent to distribute cocaine and PCP, alleging lack of sufficient evidence. Eighth, Larry Hill contends that this court must reverse his conviction under 18 U.S.C. App. § 1202(a)(1) because of a variance between the allegations contained in the indictment and the Government's proof at trial. Finally, Larry Hill complains that he received ineffective assistance of counsel.

## II. Sufficiency of the Indictment

■ Defendants' first challenge on appeal is that this court must reverse their convictions under 21 U.S.C. § 843(b) because the counts in the indictment relating to these charges were deficient. Under 21 U.S.C. § 843(b):

> It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter.

In this case, twenty-three counts of the original forty-three count indictment charged defendants with violating 21 U.S.C. § 843(b), and the jury convicted defendants on seventeen of these counts.

These counts were virtually identical to one another, except for the alleged date and time of the calls and the names of the defendants involved. Count 13, for example, read as follows:

> On or about January 11, 1983, at approximately 6:35 p.m., at Decatur, in the Central District of Illinois,
> LARRY HILL and
> ELMER KECK,
> defendants herein, knowingly and intentionally used a communication facility, that is a telephone, in committing, causing, and facilitating the commission of

the crime of conspiracy to possess with intent to distribute a controlled substance, as charged in Count I, a felony under the provisions of Title 21, United States Code, Section 846;

> In violation of Title 21, United States Code, Section 843(b).

These counts were fatally defective, according to defendants, because they did not comply with the requirements enunciated by this court in *United States v. Hinkle*, 637 F.2d 1154 (7th Cir.1981). They fail the *Hinkle* test, defendants contend, because they fail to specify the controlled substance involved or the manner in which defendants used the telephone to facilitate the conspiracy.

In *Hinkle*, this court held that, to comply with a defendant's Fifth Amendment guarantee against double jeopardy and with a defendant's Sixth Amendment right to be informed of the charges against him, an indictment charging violations of 21 U.S.C. § 843(b) "must specify the type of communication facility used, the date on which it was used, the controlled substance involved and some sort of statement of what is being facilitated with that controlled substance which constitutes a felony." *Hinkle*, 637 F.2d at 1158. The indictment before the court in *Hinkle* charged that, on or about a certain day, "defendant herein, did knowingly and intentionally use a communication facility, that is, a telephone, to facilitate acts constituting a felony under Title 21, U.S.C., § 841(a)(1); all in violation of Title 21, U.S.C., § 843(b)." *Id.* at 1156. These counts were defective because they failed to specify which of over one hundred and forty-two controlled substances defendants discussed over the telephone, and because they failed to specify which of six possible felonies under section 841(a)(1) defendants sought to facilitate through the use of the telephone. *Id.* For this reason, this court held that the indictment violated defendant's Fifth and Sixth Amendment rights because it did not establish a record with which defendant could defend against the possibility of double jeopardy, and because it did not inform defendant of the

charges against him so that he could prepare a defense. *Id.* at 1157.

The indictment in this case, unlike the one involved in *Hinkle*, did not infringe upon defendants' Fifth or Sixth Amendment rights. In this case, the counts alleging violations of 21 U.S.C. § 843(b) specified the type of communication facility used (a telephone), the felony facilitated (conspiracy to possess with intent to distribute and to distribute a controlled substance), as well as the dates and approximate times when the conversations occurred. *Cf. Hinkle*, 637 F.2d at 1158. Although the counts did not identify the controlled substances involved, they did, nonetheless, refer to the conspiracy "as charged in Count I." In the second paragraph of count I, the Government alleged the subjects of the conspiracy. According to that paragraph:

> It was part of the conspiracy that the defendants would and did possess with intent to distribute, distribute, and cause to be distributed quantities of cocaine, a Schedule II controlled substance and phencyclidine (PCP), a Schedule III controlled substance, the exact amounts of which are to the Grand Jury unknown.

Defendants therefore knew that the indictment charged them with using the telephone, on specific days and at specific times, to facilitate a conspiracy to possess with intent to distribute and to distribute cocaine and PCP. Under these circumstances, this court finds that the indictment adequately informed defendants of the

charges against them so that they could prepare a defense and guard against the possibility of future prosecutions for the same offenses. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

### III. Severance

Defendants next claim that the district court abused its discretion by failing to sever their trials from Larry Hill's trial because Hill presented a defense mutually antagonistic to their defenses.[3] Defendants argue that the trial court should have severed their trials from Larry Hill's trial when Hill's counsel, during opening argument, advanced the defense that his client was insane because of excessive PCP ingestion. In arguing Hill's insanity, his counsel conceded, "I am not going to tell you that drugs weren't discussed in those conversations." The other defendants contend that Hill's insanity defense was mutually antagonistic to their defenses that the Government failed to prove its case against them. They also argue that Hill's statement that he would not contest that drugs were discussed in the phone conversations prevented them from obtaining a fair trial because they maintained that drugs were not discussed in the calls.

A motion to sever rests in the sound discretion of the trial court, and a strong preference exists for joint trials in cases where defendants have been indicted jointly and where the indictment charges a conspiracy. *United States v. Gironda,* 758

---

**3.** In addition to this argument for severance, Larry and Debbie Hill, Keck, and Beasley present another ground on which they claim that the district court abused its discretion by failing to grant defendants' motions to sever. They claim that the Government violated *United States v. Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), when one of its witnesses testified to a conversation that he had with Beasley. When this violation occurred, they argue, the court should have granted a severance. The alleged *Bruton* violation occurred when James Atkins, an Illinois Department of Conservation employee, testified that Beasley asked him to run a license check on a certain license number. Other evidence established that Larry Hill had asked Beasley to trace this

number because Hill had observed a car bearing this license following him on a couple of occasions.

We agree with the district court that Atkins' testimony did not implicate *Bruton.* In *Bruton,* the Supreme Court prohibited the Government from introducing a defendant's post-arrest confession that incriminated his codefendant. *Bruton,* 391 U.S. at 137, 88 S.Ct. at 1628. According to the Court, the introduction of this testimony violated the codefendant's Sixth Amendment right to confront witnesses against him because the defendant who made the statement did not testify. *Id.* In this case, although Beasley did not testify, his statements in and of themselves did not incriminate any other defendants.

F.2d 1201, 1220 (7th Cir.1985). Moreover, we will reverse a district court's denial of a motion for severance only upon a showing that the court clearly abused its discretion. *United States v. Oglesby,* 764 F.2d 1273, 1275 (7th Cir.1985); *United States v. Harris,* 761 F.2d 394, 401 (7th Cir.1985).

One of the few instances in which a court should grant a motion to sever exists when defendants present mutually antagonistic defenses. *Harris,* 761 F.2d at 401. Defenses are mutually antagonistic, however, only where the acceptance of one party's defense precludes the acquittal of the other defendant. *Gironda,* 758 F.2d at 1220. Generally, a defense of insanity is not mutually antagonistic to a defense of non-participation in the alleged criminal activity. *See, e.g., United States v. Mota,* 598 F.2d 995, 1001 (5th Cir.1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980). Similarly, in this case, the jury could have concluded both that Larry Hill proved that he was insane due to excessive PCP ingestion and that the Government failed to prove that the other defendants were guilty of conspiracy to possess with intent to distribute and to distribute cocaine and PCP.

In light of Hill's codefendants' contentions that drugs were not discussed in the phone conversations, his counsel's statement that he would not contest that drugs were discussed in these conversations, to which in all but a few Larry Hill was a party, is more troublesome than the simple fact that he presented an insanity defense. To persuade this court that the district court abused its discretion in not granting a severance at this point, however, defendants must prove that the joint trial prejudiced their cases. *Oglesby,* 764 F.2d at 1276. As this court recently stated:

> The question of whether a trial of two defendants tried simultaneously infringes upon a defendant's right to a fair trial depends on whether it is within the jury's capacity in the particular fact situation to follow admonitory instructions

and to keep separate, collate and appraise the evidence relevant to each defendant.

*Id.*

We note initially that, although Hill stated that he would not contest that drugs were discussed in the conversations that the jury would hear, Hill did not state in which conversations or with which defendants drugs were discussed. That the Government introduced thirty-six different conversations, encompassing as many as ten defendants, coupled with the fact that Hill did not point the finger at any defendants in particular, diminishes their ability to prove prejudice in this case. *See United States v. Webster,* 734 F.2d 1048, 1053–54 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 565, 83 L.Ed.2d 506. Moreover, the jury's acquittals of original defendants Ted Dorman and Steve Schilawski on all counts against them and its acquittals of Hise, Debbie Hill, and Keck on certain of the telephone counts against them demonstrate that it followed the court's instructions to keep separate the evidence against each defendant. For these reasons, we hold that the district court did not clearly abuse its discretion in refusing to grant defendants' motions for severance.

## IV. Use of Transcripts

Defendants'[4] first challenge to the court's evidentiary rulings concerns the district court's decision to permit the jury to use Government-prepared written transcripts of conversations that occurred between various of the defendants and that were obtained through a wiretap placed on Larry and Debbie Hill's telephone. To aid the jury in listening to these recordings, the Government furnished the jury with transcripts of the conversations, containing the date and time of the phone calls, the names of the purported speakers, and the substance of the conversations. The judge instructed the jury prior to playing the first recording, at fourteen other times during the Government's case-in-chief, and during the final instructions, that it should resolve any discrepancies between the tapes and

---

**4.** Hise and Elliott do not join in this argument on appeal.

the transcripts in favor of the tapes and that the names in the margins were not evidence of the identities of the speakers. After the jury heard each recording, the Government retrieved the corresponding transcript, and the court did not make the transcripts available to the jury during its deliberations.

Defendants do not claim that the court abused its discretion in admitting the tape recordings at trial or in permitting the jury to use the transcripts. In addition, they do not contend that the transcripts inaccurately reproduced the substance of the phone conversations. Rather, their only challenge is that the court abused its discretion by allowing the Government to furnish the transcripts to the jury with the names of the alleged speakers contained in the margins. They argue that the prejudicial effect of inclusion of the names in the transcripts substantially outweighed its probative value.

█ Tape recordings are only admissible if the Government can establish, by clear and convincing evidence, that the recordings are "true, accurate, and authentic recording[s] of the conversation[s], at given time[s], between the parties involved." *United States v. Faurote*, 749 F.2d 40, 43 (7th Cir.1984). *See also United States v. Blakey*, 607 F.2d 779, 787 (7th Cir.1979). Before admitting the recordings, therefore, the trial court had to make a preliminary finding that the recordings involved conversations that occurred between defendants in this suit. Defendants do not challenge this finding on appeal.

█ Courts possess wide discretion in determining whether to permit the jury to use written transcripts as aids in listening to tape recordings. *See, e.g., United States v. Papia*, 560 F.2d 827, 844 (7th Cir.1977); *United States v. Bentley*, 706 F.2d 1498, 1507–08 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), and *cert. denied*, —— U.S. ——, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). In *Papia*, for example, one defendant claimed that the trial court abused its discretion in permitting the jury to use

Government-prepared transcripts as aids in listening to tape recordings. *Papia*, 560 F.2d at 844. The court had admitted the recordings under the co-conspirator exception to the hearsay rule embodied in rule 801(d)(2)(E) of the Federal Rules of Evidence. According to the defendant, he suffered unfair prejudice by the use of the transcripts because the transcripts unduly emphasized the hearsay portion of the evidence against him. *Id.* at 844. This court rejected defendant's argument, holding that the district court did not abuse its discretion in allowing the jury to use the transcripts. *Id.* We emphasized, in reaching this conclusion, that the Government permitted defendants access to the tapes and the transcripts prior to trial, that the court did not admit the transcripts into evidence and did not give them to the jury during its deliberations, and that the court instructed the jury that the contents of the recordings controlled any discrepancies between the recordings and the transcripts. *Id.*

█ Similarly, in this case, this court cannot find that the district court abused its discretion in permitting the jury to use transcripts that contained the names of the purported speakers in the margins. The Government here made the tapes available to defendants prior to trial. The court did not admit the transcripts into evidence and did not furnish them to the jury during its deliberations. Finally, the judge carefully instructed the jury on numerous occasions that it could not consider the transcripts and the names as evidence. These factors, coupled with the fact that the identification of the speakers in the margins served to assist the jury in following the tape recordings, lead us to conclude that the court did not abuse its discretion in allowing the jury to use the transcripts.

## V. Marital Privilege

█ Larry and Debbie Hill both claim that the district court erred in admitting five recordings of conversations that occurred between them. According to the

Hills, these conversations constituted excludable privileged communications between spouses.

Defendants fail to specify within which marital privilege they believe their conversations fall. One privilege, the adverse testimony privilege, may be asserted only by the witness-spouse to refuse to testify against his or her spouse. *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir.1984). The other privilege, the confidential communications privilege, may be asserted by the defendant-spouse to prevent disclosure of confidential communications that occurred between spouses during a valid marriage. *Id.* In this case, however, neither privilege protects their conversations because neither applies where both parties are "joint participants" in a crime.[5] *Id.* at 594. The Government indicted both Larry and Debbie Hill for narcotics-related offenses, and it offered substantial evidence, including these conversations, to prove that Larry Hill headed a drug-trafficking conspiracy with which Debbie Hill was intimately involved.

VI. Conversation Between Diane Hise and Debbie Hill

■■■ Defendants' final evidentiary challenge concerns the admissibility of the tape of a conversation that occurred between Debbie Hill and Hise after Hise's arrest. Hise called Hill from jail on the evening of February 22, 1983, the day agents arrested her. During the course of the conversation, Debbie Hill whispered Diana Elliott's name and stated, "It's gone for sure." Hise responded, "Oh, my god." As previously set forth, agents searching Elliott's house found a lockbox, to which Larry Hill had a key, that contained approximately one and three-quarters pounds of PCP and two smaller packages of cocaine.

Hise and Hill contend that the court abused its discretion by admitting the recording of this conversation because it was

hearsay and did not fall within the co-conspirator exception set forth in rule 801(d)(2)(E). The merits of defendants' contentions are irrelevant because the court admitted the conversation under rule 801(d)(2)(A), not rule 801(d)(2)(E). Rule 801(d)(2)(A) provides for the admissibility of statements made by a party opponent and offered against that individual. The district court correctly determined that the conversation between Hill and Hise fell within this exception because, during the conversation, both parties made statements indicating their knowledge that defendants used Elliott's house to store drugs.

Diana Elliott also claims that the court abused its discretion in admitting this conversation because it had an unfair prejudicial effect on her by suggesting that she must have possessed the same knowledge as Hill and Hise about the presence of drugs in her home. The judge carefully guarded against this inference by instructing the jury that the conversation was offered against Hill and Hise "and may not be considered as to any other defendants." Under these circumstances, we hold that the trial court did not abuse its discretion by admitting the tape of this conversation.

VII. Jury Instructions

Defendants next contend that the district court improperly instructed the jury on the law of conspiracy and abused its discretion in responding to a specific question that the jury posed during its deliberations. First, defendants complain that the judge incorrectly instructed the jury regarding the definition of conspiracy because he did not state that the existence of an agreement is an element of conspiracy. Secondly, defendants claim that the district court abused its discretion by not responding with an unqualified "no" to the jury's question: "If someone buys narcotics for their own use, is that person guilty of furthering the conspiracy?" The court instead responded that:

---

**5.** We acknowledge that the Second and the Third Circuits have rejected the "joint participants" exception to the adverse testimony privilege. *In re Grand Jury Subpoena United States, Appeal of Koecher*, 755 F.2d 1022, 1028 (2d Cir.1985); *Appeal of Malfitano*, 633 F.2d 276, 299 (3rd Cir.1980). We continue to adhere to that exception, however, as recently reiterated in the *Byrd* decision.

An isolated purchase of narcotics for a person's own use, in and of itself, and if that is the only evidence against that person, would not make him or her guilty of furthering a conspiracy. However, in order to determine whether or not such person furthered the conspiracy, all the circumstances in evidence relating to that person must be considered, if there is other evidence relating to that person.

Prior to the jury's deliberations, the court instructed it that "A conspiracy is a combination of two or more persons to accomplish an unlawful purpose." The court continued, "A conspiracy may be established even if its purpose was not accomplished. In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The *agreement* may be inferred from all the circumstances and the conduct of all the alleged participants." (Emphasis added.) According to defendants, these instructions were deficient because they stated that a conspiracy is merely a combination that does not require an agreement.

▮ We note initially that the instruction on the law of conspiracy that the judge gave was a pattern instruction from this circuit. *See* I Fed.Crim.Jury Instructions of the Seventh Circuit, Number 5.11 (1980). *See also United States v. Percival,* 756 F.2d 600, 608 n. 2 (7th Cir.1985). Furthermore, the instructions properly apprised the jury of the nature of a conspiracy. As this court recently reiterated, "A conspiracy is a 'combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.'" *United States v. Herrera,* 757 F.2d 144, 149 (7th Cir.1985) (quoting *United States v. Mayo,* 721 F.2d 1084, 1088 (7th Cir.1983)). While an agreement is a necessary element of the crime of conspiracy, the Government need not prove the agreement by direct evidence but may prove it by circumstantial evidence. *Percival,* 756 F.2d at 607. In this case, the court instructed the jury, in accordance with the law of this circuit, that a "combination" is

the essence of a conspiracy and that requisite agreement among the conspirators could be inferred from the circumstances.

▮ As to defendants' second contention, the substance and extent of supplementary instructions rests within the sound discretion of the trial court. *Papia,* 560 F.2d at 843. Although the judge must endeavor to dispel the jury's confusion, he or she need not respond to its questions with unqualified answers, especially where an unqualified answer might mislead the jury. *Id.* In this case the court did not abuse its discretion in refusing to answer the jury's question with an unqualified "no." The judge did begin his response, after all, by stating that an individual is not guilty of a conspiracy if the *only* evidence against that individual is an isolated purchase of narcotics for that person's own use. This statement conforms to our cases holding that evidence of a simple buyer/seller relationship, absent anything more, fails to establish a conspiracy. *United States v. Hyman,* 741 F.2d 906, 914 (7th Cir.1984); *United States v. Mancillas,* 580 F.2d 1301, 1307 (7th Cir.1978), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351. If, as the judge also instructed the jury, other evidence in addition to a buyer/seller relationship exists, however, a conspiracy may be established. *See, e.g., United States v. Murray,* 753 F.2d 612, 616 (7th Cir.1985); *United States v. Creamer,* 555 F.2d 612, 615 (7th Cir.1977), *cert. denied,* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93. *See also United States v. DeNoia,* 451 F.2d 979, 981 (2d Cir.1971) ("For a single act to be sufficient to draw an actor within the ambit of a conspiracy to violate the federal narcotics laws, there must be independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy, or the single act itself must be one from which such knowledge may be inferred"). We hold that the district court did not abuse its discretion by answering the jury's question in the manner that it did.

## VIII. Sufficiency of the Evidence

Diana Elliott claims that this court must reverse her convictions for aiding and abetting Larry Hill's possession with intent to distribute cocaine and PCP for lack of sufficient evidence. The evidence adduced at trial established that Larry Hill stored narcotics and drug paraphernalia in Elliott's house. When agents executed a search warrant on Elliott's home, they found a lockbox containing cocaine and PCP and two unlocked carrying cases in her bedroom closet. The two cases contained, among other things, a triple beam balance scale, a .380 caliber handgun, a set of weights, sifters, plastic bags, and four bottles of mannitol—a substance commonly used to dilute narcotics. In addition, agents discovered that Larry Hill possessed keys both to the lockbox and to Elliott's home.

The evidence also established that Hill told Elliott, in one of the phone conversations, that he wanted to come to her house "to weigh something up." Elliott responded that Hill could come over and that if she was not at home "it doesn't matter, you got the key so I'll lock the top lock." At trial, Elliott testified that she was at home on a number of occasions when Hill came over and went into her bedroom closet, although she denied that she knew what he was doing. On cross-examination, she further testified that, when the agents searched her house on February 22nd, she provided them with a signed statement acknowledging that she knew that "Larry Hill ha[d] been involved in narcotics for approximately six months."

A conviction will stand against a charge of insufficient evidence when, after viewing the evidence and all the inferences that can be drawn therefrom in the light most favorable to the Government, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *Herrera,* 757 F.2d at 149 (citing *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984)). Here, defendant and the Government construed the evidence against Elliott to support two different theories. On the one hand, defendant argued that the evidence did not prove that she had any knowledge about the contents of the cases and lockbox that Hill kept in her bedroom closet but merely showed "that she may have exercised bad judgment in allowing her future brother-in-law to use her home to store some of his possessions." The Government, on the other hand, contended that the evidence demonstrated that "Elliott provided a vital service to the drug conspiracy by knowingly allowing her home to be used as the repository for the drugs." Where the evidence rationally supports two conflicting hypotheses, as it does here, a reviewing court will not disturb a defendant's conviction. *Id.* Accordingly, this court holds that sufficient evidence supports Elliott's convictions for aiding and abetting Hill's possession with intent to distribute cocaine and PCP.

## IX. Variance Between Indictment and Proof

Larry Hill argues that a fatal variance between the allegations contained in the indictment and the evidence at trial mandates reversal of his conviction on count 41, charging him with violating 18 U.S.C. App. § 1202(a)(1). Section 1202(a)(1) makes it unlawful for a convicted felon to possess a firearm that moved in or affected commerce. The indictment charged Hill with unlawful possession of "a firearm, that is a AMT, Back-up Model, .380 caliber pistol, serial number AA2314."

Prior to trial, Hill and the Government entered into various stipulations regarding the crime charged in count 41. The only relevant stipulation, for purposes of this appeal, is the one which states: "Prior to February 22, 1983, Government Exhibit 22A, an AMT, Back-up Model, .380 caliber pistol, serial number AA2314, moved in and affected commerce." At trial, the Government asked FBI Agent Bobby Grooms to identify exhibit 22A. He responded that 22A was "a 380 caliber Kurz." According to Hill, this identification of exhibit 22A as a "Kurz" and not as an "AMT, Back-up Model," as alleged in the indictment, result-

ed in a fatal variance that mandates reversal.

■ That Hill entered into a stipulation before trial regarding exhibit 22A disposes of his contention that his conviction must be reversed because of this allegedly fatal variance. Hill stipulated that exhibit 22A was an "AMT, Back-up Model," the same weapon that the indictment charged him with unlawfully possessing. This stipulation operated as conclusive evidence on the issue of the identification of the firearm that Hill possessed, rendering superfluous Agent Grooms' testimony. *See United States v. Houston*, 547 F.2d 104, 107 (9th Cir.1977) (in prosecution for violation of 18 U.S.C. App. § 1202(a)(1), court holds that stipulations as to material facts must "be regarded by the jury as fact[s] conclusively proved"). Accordingly, this court declines to reverse Hill's conviction on count 41.

### X. Assistance of Counsel

Larry Hill's final argument for reversal is that he received ineffective assistance of counsel at trial. His failure to receive effective assistance consisted of the following allegedly prejudicial deficiencies on the part of his counsel: his choice of an insanity defense; his failure to prepare adequately for trial; his emotional unsoundness during trial; and, his failure to produce an expert witness to testify about his insanity.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court clarified the standard governing ineffective assistance of counsel claims. According to the Court:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* 104 S.Ct. at 2064. With respect to the first prong of this test, the defendant must demonstrate that the representation that he received "fell below an objective standard of reasonableness." *Id.* at 2065.

■ The majority of defendant's contentions merit little discussion. First, counsel's decision to pursue a defense of insanity due to excessive PCP ingestion constituted a strategy choice that is generally unchallengeable on appeal. *Id.* at 2065–66; *Keys v. Duckworth*, 761 F.2d 390, 392 (7th Cir.1985); *Arrowood v. Clusen*, 732 F.2d 1364, 1369–70 (7th Cir.1984). Because of the overwhelming evidence of defendant's guilt in this case, counsel's attempt to build an innovative defense is hardly surprising. The evidence left little doubt that Hill was a party to almost every admitted conversation and that he was in control of large quantities of PCP and cocaine that he stored in Elliot's house. His attorney's decision to present an insanity defense based on drug use, thereby offering an explanation for some of the Government's evidence, was not objectively unreasonable.

Similarly, defendant cannot support the allegations that he received ineffective assistance because his counsel inadequately prepared for trial and was of unsound mind during trial. Hill claims that his attorney failed to listen to the tape recordings before trial, but the fact that he offered some additional tape recordings during trial, which the Government had not offered, to prove defendant's insanity, tends to refute this contention. Defendant also assails counsel's failure to file any pre-trial or post-trial motions. However, Hill fails to specify any motions that he thinks his counsel should have filed. Similarly, defendant presents nothing in support of his contention that his attorney was "in an unsound mind during the trial." These bare assertions do not contain the necessary specificity to warrant review by this court. *See Strickland*, 104 S.Ct. at 2066.

■ Defendant's final claim is that he did not receive effective assistance of counsel because his attorney did not produce an

expert psychiatric witness to testify regarding defendant's insanity. When a defendant bases his entire defense to a criminal felony charge on a claim of insanity, counsel certainly should investigate defendant's emotional health and marshal as much medical support as he can find for his defense. *See Mauldin v. Wainwright,* 723 F.2d 799, 800 (11th Cir.1984). Expert psychiatric testimony undoubtedly constitutes some of the strongest evidence available to prove an individual's insanity. Given the varying forms of insanity, as well as the different facts of each case, however, counsel may not always be able to produce psychiatric expert testimony.

Hill does not contend on appeal that counsel inadequately investigated defendant's sanity or inadequately researched his alleged disease. There is no indication in the record that defendant suffered any emotional illness apart from or prior to his alleged drug-induced insanity. Furthermore, we recognize that an insanity defense based on excessive PCP ingestion represents an unusual insanity defense and that, therefore, even the most aggressive attorney might have difficulty locating an expert on the subject. The record here discloses that counsel represented to the judge that he attempted to locate an expert witness. Unfortunately, however, the record fails to reveal the extent of his efforts. In addition, despite the absence of a psychiatric expert, Hill's counsel presented taped conversations which, he claimed, manifested defendant's insanity, and he presented three lay witnesses who testified to defendant's insanity. Under these circumstances, this court holds that Hill did not receive ineffective assistance of counsel as a result of his attorney's failure to locate an expert psychiatric witness.[6]

### XI. Conclusion

For the foregoing reasons, this court AFFIRMS the convictions of defendants Larry and Debbie Hill, Elmer Keck, Diane Hise, Diana Elliott, and Terry Beasley.

---

**6.** We have considered all of the other arguments raised by defendants in this appeal and find them to be without merit.