# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 04-1176, 04-1177, 04-1231 & 04-2009

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ZACHARY JENKINS, MERLIN COLEMAN,
KEVIN REED and ANTOINE HILL,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 CR 236—**Elaine E. Bucklo**, *Judge.*

_____

ARGUED APRIL 13, 2005—DECIDED AUGUST 16, 2005

_____

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* The FBI and the Joliet Police Department, together with several other agencies, conducted a narcotics investigation into a drug ring operating in Joliet, Illinois. As a result of the investigation, Kevin Reed, Zachary Jenkins, Merlin Coleman, and Antoine Hill were charged with, among other things, conspiracy to distribute and to possess with intent to distribute in excess of five kilograms of cocaine and in excess of 50 grams of

cocaine base. Reed, who was the central figure in the conspiracy, pleaded guilty to the conspiracy charge and was sentenced to 360 months in prison. Hill was convicted of conspiracy and two counts of using a telephone to facilitate the conspiracy, but was acquitted of a substantive count of possession with the intent to distribute in excess of 500 grams of cocaine. Jenkins was convicted of conspiracy, four counts of using a telephone to facilitate the conspiracy, and the substantive counts of distribution of cocaine and possession with the intent to distribute crack cocaine. Coleman was convicted of conspiracy, three counts of using a telephone to facilitate the conspiracy, and a substantive count of possession with the intent to distribute crack cocaine. Hill was sentenced to 360 months in prison, Jenkins to 135 months in prison, and Coleman to 240 months in prison. Hill appeals both his conviction and sentence, Jenkins and Coleman appeal their convictions, and Reed appeals his sentence.

## I. Background

Kevin Reed was a large-scale cocaine dealer in Joliet, Illinois. Jenkins and Coleman were two of Reed's suppliers. Hill collected drug proceeds for Reed and also attempted to intimidate a potential witness against Reed. Several court-authorized wiretaps, including one on Reed's cellular phone, allowed the government to monitor the activities of the drug ring. On December 27, 2000, the government executed a search warrant and seized 1,691 grams of crack cocaine from the home of Reed's girlfriend, Wendy Whennen. Another search on August 3, 2001, resulted in a seizure of over 18 grams of crack cocaine from the home of Jenkins' girlfriend, Diedre Keys. Keys told police that the crack belonged to Jenkins, and Jenkins later admitted to police that the drugs were his.

In March 2002, the FBI busted the drug ring. Reed was arrested on March 13 and agreed to cooperate with authorities. Part of his cooperation was identifying a person who was overheard on the wiretaps as Coleman and taking police to Coleman's house in order to arrest him. Jenkins was also arrested and admitted to supplying Reed with cocaine.

Reed entered a plea of guilty to the conspiracy count on December 11, 2002. He eventually testified before the grand jury, but later claimed that his grand jury testimony was false. Reed did not testify at the trial of the other co-defendants. On two occasions the government, without objection from Reed, filed motions to continue Reed's sentencing so it could determine its sentencing position with respect to his level of cooperation and assistance. Ultimately, the government decided not to make a motion for downward departure based on substantial assistance. Reed then filed a motion for specific performance, claiming that the government promised that it would move for a downward departure of his sentence. The district court found that the government did not make any such promise and sentenced Reed to 360 months in prison.

Jenkins, Coleman, and Hill were tried before a jury in July 2003. The government played 280 recorded telephone calls that detailed the defendants' extensive involvement in the drug trade. Jenkins and Coleman were recorded discussing supplying cocaine to Reed, and Hill discussed his role as an enforcer on behalf of the conspiracy, including intimidating Reed's girlfriend, who was a potential witness for the prosecution. In addition to the recorded phone calls, the prosecution called several of Reed's associates to testify about their involvement in buying cocaine from Reed and reselling it. Jenkins and Coleman were convicted on all counts, and Hill was convicted on the conspiracy and telephone counts.

## II. Discussion

### A. Joint Issues

The defendants (other than Reed) jointly challenge: (1) the sufficiency of the evidence leading to their convictions on the conspiracy count; (2) the district court's refusal to instruct the jury with regard to multiple conspiracies and buyer/seller relationships; and (3) the admissibility of the tape recorded calls from Reed's telephone.

First, defendants argue that the evidence was insufficient to support their convictions for conspiracy. In a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the prosecution and will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Pree*, 408 F.3d 855, 865 (7th Cir. 2005). This is a difficult burden, which the defendants do not carry.

The government presented substantial evidence in the form of recorded phone calls and eyewitness testimony which depicted a long-term drug distribution network involving Reed, Jenkins, Coleman, and Hill. The evidence showed that the defendants repeatedly discussed the possession and distribution of cocaine. Reed often spoke with Jenkins and Coleman about his customers, and Jenkins and Coleman spoke with Reed about their sources and also occasionally fronted cocaine to Reed. The telephone calls revealed Hill's relationship to Reed as an enforcer and detailed how he protected the conspiracy by intimidating potential prosecution witness Wendy Whennen. A rational jury could have found the defendants guilty of conspiracy.

Second, the defendants claim that the trial court erred by failing to instruct the jury regarding multiple conspiracies and buyer/seller relationships. They claim that Jenkins was involved in a separate conspiracy with Reed and not the larger conspiracy alleged in the indictment. They also argue

that the relationships between Reed and Jenkins and between Reed and Coleman were merely those of buyer and seller, not co-conspirators. We review the district court's refusal to instruct the jury on a theory of defense *de novo*. *United States v. Skoczen*, 405 F.3d 537, 545 (7th Cir. 2005).

A defendant is entitled to an instruction on his theory of defense only if: (1) the proposed instruction is a correct statement of the law; (2) the evidence lends some support to the defendant's theory; (3) the theory of defense is not part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial. *United States v. Katalinich*, 113 F.3d 1475, 1482 (7th Cir. 1997). The district court determined that the evidence did not support defendants' theories regarding multiple conspiracies and the existence of a mere buyer/seller relationship, and we agree. As stated above, Reed often shared information about his customers with Jenkins and Coleman. Jenkins and Coleman also occasionally fronted cocaine to Reed and were only paid after Reed's customers paid him. This type of long-term, interlocking relationship is not indicative of a simple buyer/seller arrangement, nor does it support the idea that Reed was involved in several smaller conspiracies instead of one large conspiracy. The defendants were not entitled to instructions on those theories.

Finally, defendants challenge the evidentiary foundation for the tape-recorded conversations and also argue that their admission into evidence violated their rights under the Confrontation Clause as set out in *Crawford v. Washington*, 124 S.Ct. 1354 (2004). These arguments are without merit. The government provided sufficient foundation for the admission of the tapes; they called witnesses familiar with defendants' voices, had them listen to the tapes, and the witnesses identified defendants' voices as those on the recordings. Defendants' challenge goes more to the weight of the recordings than to their admissibility. To that end, the defense had full opportunity to cross-examine the witnesses

with respect to the extent of their familiarity with the voices.

As to the Confrontation Clause argument, *Crawford* does not apply. The recordings featured the statements of co-conspirators. These statements, by definition, are not hearsay. *Crawford* did not change the rules as to the admissibility of co-conspirator statements.

## B.  Jenkins' Issues

Jenkins first claims that the evidence presented by the prosecution was insufficient to sustain his conviction on the cocaine distribution counts. As with the conspiracy count, Jenkins does not meet the difficult burden placed on a defendant making a sufficiency of the evidence challenge. First and foremost, Jenkins admitted to police that it was his cocaine that was found in Diedre Keys' apartment, and that he engaged in cocaine distribution. Also, the prosecution presented recorded phone calls between Jenkins and Reed in which they discussed cocaine distribution, and testimony from other associates regarding the cocaine distribution conspiracy. Given this evidence, a rational jury could convict on these counts.

Next, Jenkins argues that the trial court erred when it denied his motion to identify and produce a confidential informant ("CI"). We review for abuse of discretion. *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994). Jenkins failed to show a compelling need to identify the CI that outweighed the public interest in non-disclosure.

Lastly, Jenkins challenges the district court's evidentiary ruling with respect to the statements made by his girlfriend, Diedre Keys. Officer Vincent Humphrey testified about the details of the search of Keys' home. Part of his testimony included statements Keys made to him regarding the crack cocaine located in her kitchen. Jenkins argues

that these statements were hearsay and should not have been admitted into evidence. We review for abuse of discretion. *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004).

The testimony was not hearsay because it was not offered to prove the fact that the cocaine belonged to Jenkins. Officer Humphrey was asked on cross-examination about whether he had read Keys her rights and about his police report which stated that Keys told the police that "Jenkins told her that she left a little something under the kitchen cabinet." Humphrey testified that Keys told him that Jenkins had left the crack under the cabinet and explained that the report contained a typo—that "she" should have been written "he". Jenkins' attorney attempted to show, through the inconsistency in the report and the fact that Keys was given *Miranda* warnings, that the police actually believed that the crack belonged to Keys. By doing so, he took a risk and opened the door to Keys' statements that attributed the drugs to Jenkins. Her statements were offered to show why the police did not believe the crack to be hers and why she was not arrested. There was no abuse of discretion in admitting the statements.

## C.  Hill's Issues

First, Hill argues that the record does not support the jury's finding that he was a part of the cocaine distribution conspiracy because the conspiracy ended when the police seized crack cocaine from Wendy Whennen. This argument is without merit. The charged conspiracy's purpose was the distribution of narcotics in the Joliet area. The fact that the government seized 1,691 grams of crack cocaine from the home of Reed's girlfriend did not end the conspiracy. The main criminal objective of the conspiracy had not been abandoned after this single drug seizure. *See United States v. McKinney*, 954 F.2d. 471, 475 (7th Cir. 1992). Also, Hill

continued to assist the conspiracy in several ways, including intimidating Whennen, a potential government witness. The evidence sufficiently established Hill's role as an enforcer in the drug conspiracy.

Second, Hill challenges the district court's denial of his motion to sever the possession with intent to distribute count of the indictment. He argues that there was very little evidence presented at trial that connected him to drugs, and though he was eventually acquitted on the possession count, the evidence presented to support it prejudiced the jury with respect to the other charges. We review a denial of a motion to sever for an abuse of discretion. *United States v. Smith*, 308 F.3d 726, 736 (7th Cir. 2002).

The count at issue is of the same character and is based on the same series of transactions as the other counts of the indictment. FED. R. CRIM. P. 8(a). The evidence presented in support of this count did not prejudice Hill. The overall evidence showed that Hill was, in fact, involved in drugs. Different people play different roles in a drug conspiracy, be it supplier, lookout, courier, or enforcer. The indictment charged, and the evidence showed, that Hill played the role of an enforcer in this particular conspiracy. The fact that he may not have had as much direct contact with the actual distribution of cocaine as others does not mean that he was not part of the overall conspiracy. Also, the fact that he was acquitted on the possession with intent to distribute count shows that the jury was able to give separate consideration to the various counts of the indictment and the evidence. The district court did not abuse its discretion in denying the motion to sever.

Finally, Hill challenges his sentence on Sixth Amendment grounds. The district court, operating prior to the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), treated the Guidelines as mandatory and made findings of fact that enhanced Hill's sentence. This was error.

We order a limited remand in accordance with the procedure outlined in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## D.  Reed's Issues

Reed claims that (1) the prosecutor breached a promise to seek a downward departure in his sentence in exchange for his cooperation, which the district court failed to remedy; and (2) his sentence violates *Booker*.

First, Reed contends that the government promised to move for downward departure based on substantial assistance if he helped to identify Coleman. The district court determined that no such promise had been made. Disputes regarding the terms of a cooperation or plea agreement are questions of fact to be determined by the district court and will only be reversed if they are clearly erroneous. *See United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999); *United States v. Daniels*, 902 F.2d 1238, 1243 (7th Cir. 1990). The district court did not err by finding that the government did not make any enforceable promise to Reed. Reed acknowledged on three separate occasions that the prosecution made no promises to him. He signed a proffer letter which stated that there was no other promise existing between himself and the government, he testified before the grand jury that the prosecution had not made him any promises about seeking a downward departure, and he admitted at his plea colloquy that no oral promises had induced him to plead guilty. Furthermore, the government twice asked the district court to delay Reed's sentencing so that it could have more time to consider its position on whether to move for a downward departure based on substantial assistance, and Reed did not object. Logic dictates that if there had been a promise made and some sort of enforceable agreement reached, Reed would not have agreed to these continuances. He would have objected,

claiming that the government did not need additional time as it had already promised to make the substantial assistance motion.

Second, Reed takes issue with the trial judge's decision to impose a sentence based on a total adjusted offense level of 41 under the Sentencing Guidelines. The district court determined that his base level was 38, but arrived at an adjusted offense level of 41 after enhancements for being a leader/organizer. Following the Guidelines, the judge sentenced Reed to 360 months in prison. As with Hill, the district court erred in treating the Guidelines as mandatory and making findings of fact that enhanced Reed's sentencing range. We remand in accordance with *Paladino*.

### E.  Coleman's Issue

Coleman maintains that the trial court erred when it allowed testimony from FBI Special Agent Wayne Zydron regarding statements made by another officer and Coleman after they played a tape containing Coleman's voice. After taking Coleman into custody, Zydron advised him of his rights, then played a tape which he believed contained Coleman's voice. After playing the tape, Zydron asked the other officer whether he thought that the voice on the tape was Coleman's. The officer agreed that the voice was indeed Coleman's, at which point, Zydron testified Coleman hung his head and said, "I'm fucked."

Coleman never moved to suppress his statement at trial. In fact, even after an inquiry by the trial judge as to whether he was going to make a motion to suppress, Coleman's attorney declined to do so. By making this strategic choice, Coleman has waived the issue.

## III. Conclusion

We AFFIRM the convictions of Jenkins, Coleman, and Hill and order a LIMITED REMAND with respect to the sentences of Reed and Hill.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-16-05