NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 11, 2006
Decided April 5, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-3881

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 02-CR-30145-02-WDS |
| STEVE JONES, *Defendant-Appellant.* | William D. Stiehl, *Judge.* |

### O R D E R

A jury found Steve Jones guilty of conspiring to distribute 50 grams or more of cocaine base, 18 U.S.C. §§ 846, 841(a)(1), and selling a firearm to a known felon, 18 U.S.C. § 922(d)(1). Jones, while serving a sentence for murder and attempted murder at Menard Correctional Center, organized a drug ring with the help of a corrections officer. At one point, Jones arranged for the guard to sell a handgun to a conspirator outside the prison, Jau Tolden, who was Jones's former cellmate at Menard and a convicted felon. The district court sentenced Jones to 360 months' imprisonment, to run consecutively to the undischarged portion of his state sentence. Jones filed a notice of appeal, but his appointed lawyer has moved to withdraw because he cannot discern a nonfrivolous argument for appeal. *See Anders v. California*, 386 U.S. 738 (1967). Jones has responded to counsel's brief,

*see* Cir. R. 51(b), though his submission does not point out any potential issues that counsel has not discussed. Counsel's brief is facially adequate, and so we will discuss only the potential arguments that he and Jones raise. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997).

Counsel first considers challenging the district court's decision to allow the jurors to use transcripts to better understand the audio tapes of recorded telephone calls Jones made from prison. Jones spoke in Pig Latin and coded language during these calls to disguise names and incriminating information, and the government prepared transcripts of the calls that contained parenthetical translations of the coded language. Jones's trial attorney moved to exclude the transcripts, arguing that the translations were not authenticated and violated Jones's right to confront witnesses against him. After a hearing, the district court decided to allow the transcripts provided that the translator was qualified as an expert witness and would testify and be subject to cross-examination at trial. Before trial, Jones stipulated that the translator—a corrections officer who had monitored most of the calls live—was an expert in the field of prisoner code. When the recordings were ultimately admitted into evidence and published to the jury, the district court admonished the jury that the transcripts were merely a guide and that only the recordings were evidence. The district court repeated this admonishment in the jury instructions and told the jury that it had the responsibility to "decide whether the transcripts correctly reflect what was said and who said it." *See* Seventh Cir. Pattern Crim. Jury Instr. 3.17.

We agree with counsel that it would be frivolous to argue that the district court abused its discretion by allowing the jurors to consider the transcripts that the government submitted. District courts have broad discretion in deciding whether to allow the jury to use written transcripts as aids when listening to tape recordings. *United States v. Singleton*, 125 F.3d 1097, 1105 (7th Cir. 1997); *United States v. Keck*, 773 F.2d 759, 766 (7th Cir. 1985). We have upheld the use of "decoded" transcripts to assist a jury in understanding conversations between gang members. *See, e.g.*, *United States v. McAnderson*, 914 F.2d 934, 947 n.1 (7th Cir. 1990). Jones's attorney did not challenge the accuracy of the transcripts when cross-examining the officer who had translated the phone calls. Nor did Jones submit transcripts that he thought more accurately reflected the content of the conversations, although the government had made the tapes available to the defense in the months before trial. *See United State v. Zambrana*, 864 F.2d 494, 497-98 (7th Cir. 1988) (holding that when content of recording is disputed, burden lies with parties to present transcripts of other evidence to support their version). Finally, the district court gave the jury extensive guidance as to the proper use of the transcripts, both at the time each tape was played and in the jury instructions. Under these circumstances, it would be frivolous to argue that the district court abused its discretion.

Counsel also considers challenging the admission of letters and recorded conversations between Jones and coconspirator Jau Tolden on the ground that they were introduced in violation of Jones's Sixth Amendment right to confront witnesses because the government never called Tolden as a witness. Counsel properly rejects this argument. We would review only for plain error because Jones did not object on this ground in the district court. *See United States v. Tolliver*, 454 F.3d 660, 664 (7th Cir. 2006). Statements made to coconspirators in furtherance of the conspiracy are not testimonial hearsay—or hearsay at all—and their admission therefore does not raise concerns under the Confrontation Clause. *United State v. Jenkins*, 419 F.3d 614, 618 (2005); *Tolliver*, 454 F.3d at 665. The Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), does not alter this proposition. *Jenkins*, 419 F.3d at 618.

Counsel next raises several potential arguments concerning the composition of the venire and jury. We agree that all of them would be frivolous. First, counsel considers challenging the makeup of the jury pool, which Jones contends did not consist of a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975). Jones's trial counsel objected to the composition of the venire, of which only three people were black. The district court explained that the court employs an independent contractor to select pools; a computerized process is used to generate a list of names from a master wheel comprised of names of everyone in 11 surrounding counties who has a driver's license or is registered to vote. Jones submitted no statistical evidence to establish that a jury array with three black members was not representative, nor did he claim that the process used to select the pool systematically excludes black people from jury service. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979) (explaining three requirements for a prima facie showing that jury pool is not drawn from fair cross-section of community); *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001). He merely observed that blacks appeared to be underrepresented on his particular panel, and that is not enough. *See Phillips*, 239 F.3d at 842.

Equally frivolous is the potential argument that the government improperly used peremptory challenges to exclude black members of the venire from the jury. Under *Batson v. Kentucky*, 476 U.S. 79 (1976), the prosecution may not use a peremptory challenge to strike a potential juror on the basis of his or her race. When claiming a *Batson* violation, the defendant must first make a prima facie case that a challenge was used to exclude a juror based on race. *United States v. Brown*, 289 F.3d 989, 993 (7th Cir. 2002). If the prosecution then comes forth with a race-neutral explanation, the trial court will allow the challenge unless the defendant establishes that the explanation is pretextual. *Id.* At Jones's trial, two of the three potential jurors who were black were excluded for cause, and the government exercised a peremptory challenge against the third. When asked, the government supplied a specific and race-neutral explanation—the potential juror's transience and lifelong unemployment—the credibility of which the district court accepted and

the validity of which we have upheld before. *See United States v. Lewis*, 117 F.3d 980, 983 (7th Cir. 1997). Jones made no attempt to demonstrate pretext, and it would therefore be frivolous to argue on appeal that the district court clearly erred in allowing the government to exercise its peremptory challenge.

Similarly untenable is the contention that Jones's right to an impartial jury was violated by the presence of five jurors whose backgrounds, Jones asserts, rendered them biased against him. Ordinarily we would address such a challenge by considering with deference the district judge's assessment of whether potential jurors are impartial, *see United States v. Graves*, 418 F.3d 739, 743 (7th Cir. 2005), but in this case Jones did not challenge the impanelment of the allegedly biased jurors in the district court. He now asserts that certain jurors were not impartial because they served in the military or had a close relative who did, went though rehabilitation for substance abuse or had a family member who did, had been in a car accident with a police officer, or had a cousin who was a corrections officer. These jurors all swore under oath that they could be impartial and base their verdict only on the evidence, and none had such close ties to the case that bias could be implied. *See United States v. Medina*, 430 F.3d 869, 878 (7th Cir. 2005). It would be frivolous to argue that the district court plainly erred in allowing any of these jurors to serve.

Next counsel deems frivolous the potential argument that the district court erroneously refused to give the jury instruction on coercion that Jones proffered. Jones's theory of defense was that the guard he conspired with in fact forced him to arrange the drug transactions and firearm sale by threatening him, beating him up, and issuing him bogus disciplinary "tickets." The district court concluded that Jones's testimony—the only evidence in the record for his theory of the case—did not support an instruction. The defense of coercion has three elements: (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) the absence of a reasonable opportunity to avoid the threatened harm other than by committing the crimes charged. *See United States v. Fiore*, 178 F.3d 917, 922 (7th Cir. 1999). There must be sufficient evidence as to all three elements in order to justify a jury instruction. *See United States v. Bastanipour*, 41 F.3d 1178, 1184 (7th Cir. 1994).

As the district court noted, there was not "any testimony as to an immediate threat" in Jones's case. The issuance of unfounded disciplinary tickets does not create "the imminent fear of death or serious bodily harm." *United States v. Tokash*, 282 F.3d 962, 969 (7th Cir. 2002). Nor does planting contraband in Jones's cell—another threat Jones described. And though Jones testified that he had been threatened with death and "roughed up," he also said that this occurred because his "partner" had shortchanged the guard on a drug deal. By his own admission, then, the threats of physical harm did not coerce Jones's participation in the crimes. The district court also reasoned that nothing in Jones's testimony suggested that he

lacked an opportunity to avoid the threatened harm by means other than committing crimes; the district court noted that Jones had "ample opportunity" to report the guard but did not. *See id.* at 970. (Jones testified that he informally reported that he was being "harassed" but never mentioned the guard's name.) We have stated that a coercion instruction is appropriate only when there is evidence that the defendant "had no alternative but to commit the crime in order to avoid the greater harm." *United States v. Toney*, 27 F.3d 1245, 1248 (7th Cir. 1994). Given the testimony in this case, it would be frivolous to argue that Jones submitted "sufficient evidence such that a rational jury could infer that he was coerced into committing the crime charged." *Toney*, 27 F.3d at 1248.

Counsel next considers arguing that there was insufficient evidence to support Jones's convictions for the drug conspiracy and the sale of a firearm to a known felon. In light of the considerable deference given to a jury verdict, *see United States v. Stevens*, 453 F.3d 963, 965 (7th Cir. 2006), and the overwhelming evidence against Jones, counsel correctly concludes that a sufficiency-of-the-evidence challenge would be frivolous.

Next, counsel considers challenging Jones's 360-month sentence on a variety of grounds and concludes that all the arguments are frivolous. First, counsel discerns no error in the calculation of the advisory guideline range with respect to the drug quantity, the adjustments for Jones's leadership role, *see* U.S.S.G. § 3B1.1(a), and obstruction of justice, *id.* § 3C1.1, and the Criminal History Category of VI (counsel wisely declines to revive trial counsel's objection that the prior crimes were not charged in the indictment or proved beyond a reasonable doubt, *see United States v. Washington*, 417 F.3d 780, 788 (7th Cir. 2005)). Counsel correctly notes that the 360-month sentence—at the low end of the range—is presumed reasonable, *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and he discerns no basis on which the presumption might be overcome.

Counsel also considers challenging the imposition of a sentence consecutive to Jones's state sentence, but concludes that the argument would be frivolous. The district court recognized that the guidelines call for consecutive sentences when the offense of conviction was committed while the defendant was serving another sentence, *see* U.S.S.G. § 5G1.3, acknowledged its discretion to deviate from the guidelines, and ultimately concluded that the federal sentence should be consecutive. We agree with counsel that there is no sound basis on which to challenge the district judge's decision. Counsel also concludes that there is no tenable argument to be made concerning the district court's refusal to delete from the Presentence Investigation Report a paragraph that outlined Jones's attempt to have a confidential informant killed. In response to Jones's objection, the district court stated that it would not rely on that paragraph when selecting an appropriate sentence. Thus, Jones could not claim to have been harmed by the PSR's content.

Finally, counsel considers raising a claim that his trial attorneys were ineffective, but concludes that such a claim would be premature because the record is need of further development. We agree with counsel that in this case, as in most, the ineffective-assistance claim is better saved for a motion under 28 U.S.C. § 2255. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

Counsel's motion to withdraw is GRANTED and the appeal is DISMISSED. In light of this decision, Jones's "Motion for Additional Information" is DENIED as moot.